United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 11, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-60688
c/w 04-60924

RALPH JONES; ET AL,

Plaintiffs,

RALPH JONES,

Plaintiff-Appellant,

versus

ROBINSON PROPERTY GROUP, L.P., d/b/a/
HORSESHOE CASINO & HOTEL,

Defendant-Appellee.

Appeals from the United States District Court
for the Northern District of Mississippi

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Ralph Jones appeals the district court's decision to grant summary judgment to Robinson

Property Group in his race discrimination suit. Jones also appeals the district court's denial of his

motion for leave to amend his complaint to add a claim of retaliation. For the reasons set forth

below, we affirm in part, reverse in part, and remand this case back to the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant Ralph Jones (Jones) is an African-American male living in Tunica County, Mississippi. He is a certified poker dealer who has worked in various casinos as a poker dealer and in other capacities. He has also dealt in several major poker tournaments, including the World Poker Open held at the Horseshoe Casino. It is undisputed that Jones is a well qualified poker dealer, whose dealing skills are better than the average poker dealer in Tunica County, Mississippi.

Appellee Robinson Property Group (RPG) first opened the Horseshoe Casino and Hotel in Tunica, Mississippi, in 1995. Ken Lambert has served as the poker room manager at the Horseshoe since that time.

Jones alleges that he has repeatedly sought and been refused a position with RPG. Jones first applied for a position at Horseshoe in late 1994, before the casino opened. The parties dispute whether Jones sought a position as a poker room supervisor or a **poker dealer.** Lambert claims that Jones applied for a position as a poker room supervisor and when he informed Jones that the position had been taken, he offered Jones a position as a poker dealer instead, which Jones declined. Jones denies that Lambert offered him a poker dealer position. In May 1995, Jones applied for a poker floor person and a poker dealer position at Horseshoe. Jones was not hired for either position. Two weeks later, Jones complained to Anna West, Horseshoe's Director of Human Resources, that his non-hiring was due to racism. Jones asked her whether the casino had a problem with hiring blacks as poker dealers because he observed that there were no African-Americans working at the Horseshoe as poker dealers at that time. Lambert was summoned to respond to Jones' question. Lambert responded to Jones' complaint by stating that there were no qualified African-American poker dealers in Tunica County. Jones informed him that there were at least five qualified African-

2

Americans in the area, including himself. Lambert testified that he became indignant at Jones' accusation, and he felt "misjudged" and "embarrassed." He claims that he nonetheless offered Jones a position as a poker dealer again. When Jones refused and he persisted in his racial allegations, Lambert testified that his feelings became hurt and he ended the conversation. Jones denies that he was offered a position as a poker dealer.

Between 1995 and 2002, Jones submitted applications for a poker dealer position no less than 10 times. Horseshoe has employed Jones in other departments and on a temporary basis as a poker dealer during high profile poker tournaments; however, Jones has never been hired by Horseshoe on a permanent basis. The record reveals that during the relevant time period the Horseshoe was hiring poker dealers for permanent positions. The Horseshoe generally employs a staff of 40-45 poker dealers. On the heels of Jones' discrimination allegation, Lambert immediately hired three African-American individuals as permanent poker dealers. In addition, Horseshoe hired at least nine white poker dealers in 1995. In May 1999, the Horseshoe hired one white poker dealer. In 2000, the Horseshoe hired five white poker dealers. The Horseshoe added six additional white poker dealers in 2001 and four white poker dealers in the first eight months of 2002. In September 2002, Jones filed his charge of discrimination with the EEOC. In the nine months preceding Jones' discrimination charge, the Horseshoe added thirteen full time poker dealers– ten were white, one was Asian-American and two were African-American.

Two former Horseshoe employees allege that Ken Lambert has made racially offensive statements during his tenure at the casino. Lesley Mims, a poker dealer and part-time supervisor at Horseshoe until 2001, claimed that Lambert used the n-word "very often," although later in her deposition she testified that he used the n-word "without any qualms whatsoever" but it wasn't very

3

often. She testified that in 1997 or 1998, a highly qualified African-American female applied for a position as a poker dealer, but was not hired. She also stated that she queried Lambert as to why such a talented black woman was not hired, to which Lambert allegedly responded "these good old white boys don't want black people touching their cards." Later, Mims averred that she actually could not remember whether it was Lambert or Jim Presley, Lambert's assistant at the time, who made the statement. Mims claimed that this discriminatory attitude was prevalent at Horseshoe. As proof, she noted that there were very few black dealers employed at the Horseshoe even though there were qualified black dealers available in the area. Sam Thomas, a former Horseshoe employee, claims that Lambert told him in 1994 or 1995, "maybe I've been told not to hire too many blacks in the poker room."

Lambert denies ever making the comments attributed to him or that racial animus ever infected his hiring decision. He testified that his refusal to hire Jones resulted from his conclusion that "Ralph Jones is not a well-liked person." He contends that two of his shift supervisors told him that Jones is not well liked. However, the two shift supervisors Lambert named, Brooks Bradley and Terry Bargy, deny ever giving a negative opinion of Jones to Lambert. To the contrary, Bargy testified that he liked Jones and Bradley stated that Jones was a "nice guy." Lambert also testified that his decision not to hire Jones was based on his own observation that Jones is "pushy." He doubts Jones' integrity based on the fact that Jones misjudged him by accusing him of race discrimination in 1995.

On September 3, 2002, Jones filed a charge of race discrimination with the EEOC alleging that Lambert, and thus RPG, refused to hire him as a poker dealer because of his race. After obtaining a right to sue letter from the EEOC, Jones filed suit on January 6, 2003, alleging race

4

discrimination under Title VII and 42 U.S.C. § 1981. The complaint also alleged Lambert and RPG committed race discrimination against another plaintiff, Nathaniel Allen.[1] On January 28, 2004, Jones petitioned the district court for leave to amend his complaint to add a claim that RPG refused to hire him in retaliation for his complaints of discrimination. The magistrate judge recommended that the motion to amend be denied on the ground that Jones had not adequately explained the delay in filing the motion to amend. The district court agreed with the magistrate judge's determination and denied the motion. The district court subsequently granted summary judgment against Jones on his race discrimination claim. The district court held that Jones had not submitted direct evidence of racial discrimination and Jones had failed to establish a prima facie discrimination case using circumstantial evidence. After granting summary judgment in favor of RPG, the district court's clerk granted RPG's motion for costs under Rule 54(d) of the Federal Rules of Civil Procedure. Jones appealed the award of costs to the district court on the grounds that he is indigent and cannot afford to pay. The district court affirmed the clerk's order taxing costs. Jones filed a timely appeal from the district court's rulings.

STANDARD OF REVIEW

This court reviews the grant or denial of a motion for summary judgment *de novo*, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate. Lamar Adver. Co. v. Cont'l Cas. Co., 396 F.3d 654, 659 (5th Cir. 2004) (citation omitted). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as

---

[1] Allen's suit was dismissed on summary judgment on the ground that Allen was not qualified to be a poker dealer because he did not hold a gaming license. Allen does not appeal the decision.

to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

We review the district court's denial of a leave to amend for abuse of discretion. Schiller v. Physicians Res. Group Inc., 342 F.3d 563, 566 (5th Cir. 2003) (citations omitted).

DISCUSSION

A.      Summary Judgment

Jones presents a claim for discrimination under both Title VII and § 1981, but the analysis under both statutes are identical, Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002), the only substantive differences between the two statutes being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies. See Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 351 (5th Cir. 2001); see also Cervantes v. IMCO, Halliburton Servs., 724 F.2d 511, 513 n.4 (5th Cir. 1984). Because neither of these differences are pertinent here, we need not separately analyze the merits of the claim under each statute.

Under Title VII, an employer cannot "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). An employee can prove discrimination through direct or circumstantial evidence. Portis v. First Nat. Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994) (citation omitted). If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the

6

discriminatory animus. <u>Brown v. East Mississippi Elec. Power Ass'n</u>, 989 F.2d 858, 861 (5th Cir. 1993) (citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989)). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. <u>Id.</u>

Jones argues that the district court erred in granting summary judgment to RPG as to his discrimination claim. He asserts that he provided direct evidence of discrimination, specifically, Lesley Mims' testimony that Lambert would use the n-word "with no qualms whatsoever, " and that Lambert, or his assistant, stated "these good old white boys don't want black people touching their cards."

The district court held that Mims' testimony did not constitute direct evidence because the court had to make too many inferences in order to determine that the evidence demonstrated that Jones was rejected for employment based on his race. The court also found that Mims' testimony was not credible direct evidence because Mims recanted her testimony at a later date. The district court based his averment that Mims had recanted her testimony on the fact that in Mims' deposition, she stated she could not remember a specific instance when Lambert actually used the n-word and she could not remember whether it was Jim Presley, Lambert's assistant, or Lambert who had stated that "good old white boys don't want blacks touching their cards in their face."

We have previously held that "statements or documents which show on its face that an improper criterion served as a basis-not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination." <u>Fabela v. Socorro Indep. Sch. Dist.</u>, 329 F.3d 409, 415 (5th Cir. 2003) (citing <u>Fierros v. Tex. Dept. of Health</u>, 274 F.3d 187, 192 (5th Cir. 2001). When a person or persons with decision making authority evinces racial animus that may constitute direct evidence of discrimination. <u>See</u> <u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d

285, 290 (5th Cir. 2004) (citations omitted); see also Young v. City of Houston, Tex., 906 F.2d 177, 180-81 (5th Cir. 1990) (citing Kendall v. Block, 821 F.2d 1142, 1145-46 (5th Cir. 1987) ("This court has implied that calling an employee a 'nigger' would be direct evidence of race discrimination."). We have also previously observed that racial epithets undoubtably demonstrate racial animus. Causey, 394 F.3d at 289 n.2.

Because this case is before us on summary judgment review, we are required to view the evidence in the light most favorable to Jones, taking the record evidence and all reasonable inferences therefrom in his favor. Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000). We should assume the truth of the statements in the record; it is inappropriate to make credibility determinations or weigh the evidence on summary judgment. Id. Upon extensive review of the parties' arguments and the record in this case, and mindful of the summary judgment standard, we find that Jones has demonstrated direct evidence of discrimination.

Mims stated that she inquired why an African-American poker dealer was not hired and was told, by either Lambert or his assistant, that "they hired who they wanted to hire and there were not going to hire a black person unless there were extenuating circumstances." She was then told by Lambert, or his assistant, that "good old white boys don't want blacks touching their cards in their face." Sam Thomas testified that in 1995, that Lambert told him that "maybe I've been told not to hire too many blacks in the poker room." It is incontrovertible that Lambert made the hiring decisions at Horseshoe and Presley as his assistant would have provided input, therefore, viewing the evidence in the light most favorable to Jones, the aforementioned evidence proves, without inference or presumption, that race was *a* basis in employment decisions in the poker room at Horseshoe. The evidence need not show that race was the sole basis in order to constitute direct evidence. Fabela.,

329 F.3d at 415. Although Mims' declaration differs slightly from her deposition testimony, we disagree with the district court's conclusion that Mims' testimony is therefore to vague and conclusory to constitute direct evidence of discrimination. Mims did not assert a mere contention that race was a factor in Lambert's hiring decisions. Rather, Mims' testimony cites specific statements and, especially in light of the summary judgment standard, she does prove with sufficient particularity when the statements were made and generally who made them. Mims' and Thomas' testimony clearly and explicitly indicates that decision maker(s) in the poker room used race as a factor in employment decisions, which is by definition direct evidence of discrimination. See Id. Thus, we find that Jones has presented direct evidence of discrimination and accordingly, he has established a prima facie case of discrimination. The district court erred in granting summary judgment for RPG. We thus remand this case back to the district court for further proceedings consistent with this opinion.[2]

B.      Motion for Leave to Amend

Jones also challenges the district court's ruling denying his motion to amend his complaint. Jones' sought to add a claim of retaliation against RPG. Jones argued that during discovery RPG withheld evidence of retaliation, thus delaying Jones' ability to file the retaliation charge with the EEOC, and concomitantly, delaying Jones' ability to file the amendment to the complaint. Jones contends that he did not learn until Lambert's testimony at the September 30, 2003 deposition, that Lambert refused to hire Jones because of, *inter alia*, Jones' discrimination complaint lodged with Horseshoe's human resources office in 1995. Jones argues that during discovery, an interrogatory required RPG to provide all the reasons for the casino's refusal to hire Jones. RPG did not state that

---

[2] Jones also appeals the district court's award of costs. Because we reverse the district court's grant of summary judgment for RPG, RPG is no longer a prevailing party pursuant to FED. R. CIV. PRO. 54(d). The award of costs is also vacated.

9

Jones' charge of racial discrimination was a basis for his non-hire. He claims that he did not discover that Lambert intentionally retaliated against him because of his 1995 complaint to human resources until the September deposition, and the evidence of retaliation was undiscoverable prior to that time. He argues that prior to the September 2003 deposition he only had his subjective belief to support a retaliation claims, which would have been insufficient to withstand summary judgment.

The district court averred that Jones failed to offer an explanation for the two month lapse of time between the deposition and the filing of the EEOC claim. Moreover, the court observed that Jones' proposed amended claim came nearly nine years after his initial accusation of racial bias, one year after the suit was filed and eight months after the established amendment deadline had lapsed. Because of Jones' delay in filing his amendment, the district court held that Jones' motion for leave to amend his complaint should be denied. Upon review of the record, we do not find that the district court abused its discretion in so ruling, and accordingly, we affirm the district court's ruling..

Rule 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" Lyn-Lea Travel Corp. v. Am. Airlines, v. Harry L. Laws Co., Inc. ,283 F.3d 282, 286 (5th Cir. 2002) (citation omitted). A district court must possess a "substantial reason" to deny a request for leave to amend, id., but "leave to amend is by no means automatic. Halbert v. City of Sherman, 33 F.3d 526, 529 (5th Cir. 1993) (citation omitted). Decisions concerning motions to amend are "entrusted to the sound discretion of the district court[.]" Quintanilla v. Tex. Television, Inc., 139 F.3d 494, 499 (5th Cir. 1998) (citation omitted). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party

10

by virtue of allowance of the amendment, and futility of the amendment. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. Nov. 1981).

RPG asserts that Jones unduly delayed amending his complaint to add the retaliation claim and that it will be prejudiced by Jones' untimeliness. Jones bears the burden of showing that a delay was "'due to oversight, inadvertence, or excusable neglect.'" Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir. Jan. 1981). Jones contends that he filed the motion to amend eight months after the established amendment deadline lapsed, which had been extended twice, because the evidence of retaliation was undiscoverable. However, Jones' excuse does not justify his considerable delay in seeking to amend his complaint to add the retaliation claim.

Jones did not "discover" direct evidence of retaliation until Lambert's deposition testimony when Lambert explicitly stated that he refused to hire Jones in part because of Jones' complaint in 1995, which made Lambert feel "misjudged" and "embarrassed." Nonetheless, even though direct evidence of retaliation did not materialize until Lambert's deposition, there was sufficient evidence in the record prior to that time to raise a genuine issue of fact as to whether Jones' non-hire was retaliation. To establish a claim for retaliation, Jones would have to show: (1) that he engaged in activity protected by Title VII; (2) RPG took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir. 1997) (citations omitted). Jones easily satisfies the first two requirements for a retaliation claim. In September 2002, Jones filed an EEOC charge against RPG, which is a protected activity, see 42 U.S.C. § 2000e-3(a), and his subsequent non-hire was an adverse employment action taken against him. Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995). Moreover, there was sufficient evidence in the record, long before Lambert's testimony, to

11

establish a genuine issue of fact as to whether Jones could demonstrate the requisite causal connection between the protected activity and the adverse action. Jones filed his EEOC charge in September 2002, and he submitted applications for employment in both October and December of 2002 that did not result in his employment with Horseshoe. However, the record reflects that RPG did hire approximately 6 full time poker dealers between October and December of 2002. The closeness in time between the protected activity and the adverse employment action could create a genuine issue of fact as to whether there was a causal connection. Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation"). We have noted that a time period of four months is sufficient to demonstrate a causal link for summary judgment purposes, Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001) (citation omitted), therefore, surely the less than 60 day period that elapsed here between the protected activity and an adverse action would have been sufficient for Jones to demonstrate a causal connection, and survive summary judgment. Although Jones did not have direct evidence of retaliation flowing from his 1995 complaint until Lambert's deposition, prior to Lambert's deposition and the amendment deadline there was sufficient evidence in the record to establish a prima facie case of retaliation based upon Jones' filing of an EEOC charge in 2002. Because Jones could have presented *a* claim of retaliation well prior to Lambert's deposition, it was not unreasonable for the district court to find that Jones unduly delayed in asserting a retaliation claim. Therefore, we find that the district court did not abuse its discretion in denying Jones' motion for leave to amend his complaint.

## CONCLUSION

12

For the foregoing reasons, we AFFIRM the district court's denial of Jones' motion for leave to amend his complaint but we REVERSE the district court's grant of summary judgment in RPG's favor as to Jones' discrimination claims. The district court's ruling awarding costs to RPG is vacated.

AFFIRMED in part, REVERSED in part, VACATED in part and REMANDED.