IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 17, 2008

Charles R. Fulbruge III
Clerk

No. 06-11119

JOHN GREGORY REILLY,

Plaintiff-Appellant,

v.

TXU CORPORATION and TXU BUSINESS SERVICES COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:05-CV-81

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PER CURIAM:[*]

John Reilly appeals a summary judgment in favor of TXU Corporation ("TXU") on his claim that he was denied a promotion because of his race, white,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in violation of 42 U.S.C. § 1981.[1]  We reverse and remand.

I.

Reilly began working for a predecessor to TXU in 1987 as a part-time cashier.  From 1989 through 2004, he worked in TXU Business Services Company's' Procurement Department, which was responsible for handling the procurement activities for TXU's subsidiaries.  His duties included preparing requests for and evaluating proposals and negotiating and drafting contracts.  He received repeated raises, and his title changed from time to time.

In 1999, Debbie Dennis, Vice President of Procurement at TXU Business Services Company, began restructuring the department to cut costs.  To accomplish this, she decided to make the transition from "tactical procurement" to "strategic sourcing."  She also flattened the organizational structure of the department by reducing the number of managers who did not report to her and by creating seven manager positions who reported directly to her, four of whichSS Corporate, Energy and Portfolio Procurement Management Manager, Nuclear Procurement Manager, Electric Delivery Procurement Manager, and Fossil Generation and Mines Procurement ManagerSSwere responsible for purchasing for specific lines of business.

The remaining direct-report positions were Technology Procurement Manager, Strategic Sourcing Manager, and Vice President of Supplier and Workforce Diversity.  The Nuclear Procurement Manager and Vice President of Supplier and Workforce Diversity were existing positions and were filled by Ramon Mendez, a Hispanic male, and Cheryl Stevens, a white female, respectively.

According to Dennis, the Technology Procurement Manager and Strategic

---

[1] At all times relevant to this appeal, Reilly was employed by TXU Business Services Company, which, until recently, was a wholly owned subsidiary of TXU, for whom it performed shared services for other TXU subsidiaries.  There is a dispute whether TXU was Reilly's employer as defined by § 1981.  We do not reach that question, because it was not before the district court.  For the sake of convenience, we refer to "TXU" as the employer.

Sourcing Manager positions were established to support the other five direct report managers. She left these positions unfilled so as to give the five other managers input into the hiring decision. The parties dispute which of these two positions was filled first.

The Strategic Sourcing Manager position was first announced internally and externally around March 26, 2002; the position carried different requirements depending on the applicant's level of education. Because Reilly and Ayanna Clunis, the black external applicant who was ultimately hired, had graduate business degrees, the only relevant requirement was that the candidate needed "5 to 7 years of strategic sourcing related experience and supervision."

The hiring procedure involved at most three levels. External candidates who met the minimum requirements had a telephonic pre-screening interview with Mary Gano of Human Resources; internal candidates were not pre-screened. The second step for external candidates, and the first for internal candidates, was an interview with Dennis and/or a member of Human Resources.

The third and final step was an interview with a panel of Dennis, Genynille Dillingham (Human Resources), Ben Ezzell (Corporate), Bob Gentry (Electric Delivery), Jim Breland (Fossil Production), Stevens, and Mendez. The panel asked each candidate pre-selected questions on issues particular to each individually and to the department as a whole. Panel members, including Dennis, then gave each applicant a score. Dennis considered this input, but the final decision remained with her.

As an internal candidate, Reilly did not go through a pre-screening interview but skipped to the initial interview. Dennis and Gano interviewed him on May 3, 2002, after which Dennis invited him to interview before the entire panel on May 15. Of all the applicants interviewed during this round, Reilly scored the highest, with an average of 39.875. Dennis gave him a 38.

Clunis sent Dennis an email inquiry about employment opportunities on

April 12. Dennis replied on May 14, a day before Reilly's second interview, but did not mention that the position was available, because she did not immediately recognize Clunis as being qualified. Clunis emailed again on June 18, stating that she was still interested in whatever positions might be available. Dennis responded that she was not sure Clunis had "the specific skills that [were] required" but forwarded Clunis's resume to Human Resources to be sure. Human Resources determined that Clunis's work history qualified her for the position even though she had less than five years' specific strategic sourcing experience.

Dennis and a member of Human Resources did a telephonic pre-screening interview of Clunis on June 25. Unlike other applicants, Clunis did not go through the usual first round interview and moved instead to the full panel, sans Stevens. Dennis scored Clunis a 36, compared to the 38 she had given to Reilly.

On July 29, Reilly met with Ezzell, his former boss and a member of the panel, who told Reilly that though the interview had gone well, he thought Dennis "ha[d] a diversity issue." Particularly, Ezzell thought that because Dennis was a member of the Workforce Diversity Program, it would be unseemly for her to hire all white males for the positions that reported to her directly. Ezzell also expressed surprise that Dennis had hired him, for the same reason.

Clunis assumed the Strategic Sourcing Manager position in August 2002, then promoted Reilly to Strategic Sourcing Representative Senior. He served in that position until 2004.

## II.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a summary judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is material if a reasonable jury would be permitted to return a verdict for the non-moving party.

Robertson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). We review a summary judgment de novo, applying the same standard as did the district court. Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007). All facts are construed in favor of the non-movant. Id.

Section 1981 provides that all persons shall have the same rights "as [are] enjoyed by white citizens." 42 U.S.C. § 1981. Like title VII, § 1981 prohibits discrimination in private employment against anyone, regardless of his race. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 286-87 (1976). The fact that Reilly is white is no bar to suing under § 1981. Id. "The elements of the claims under Title VII and [Section 1981] are identical. We therefore evaluate both claims using the same analysis." Pratt v. City of Houston, 247 F.3d 601, 605 n.1 (5th Cir. 2001) (internal citations omitted).

To survive a motion for summary judgment, a plaintiff must present sufficient evidence to create a genuine issue of material fact that his employer discriminated because of race. The plaintiff may present direct or indirect evidence of discrimination. Alvarado, 492 F.3d at 611.

A.

Direct evidence is evidence, which if believed, proves the fact in question without inference or presumption.[2] Jones v. Robinson Prop. Group, 427 F.3d 987, 992 (5th Cir. 2005). The presentation of credible direct evidence that discrimination motivated or was a substantial factor in the adverse employment action shifts the burden to the employer to show that, regardless of discrimination, the same decision would have been made. Id.

Reilly characterizes as direct evidence the statement made to him by Ezzel that Dennis "ha[d] a diversity issue." For such a remark to constitute direct evi-

---

[2] If we must draw inferences from the evidence, it is circumstantial, not direct.

dence of racial discrimination, it must meet the four-factor test in Auguster v. Vermilion Parish School Board, 249 F.3d 400, 405 (5th Cir. 2001): The statement must be (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. The parties dispute only the applicability of the third factor.

In our analysis of the third factor, we have said that the evidence of racial animus on the part of someone with decision-making authority can be direct evidence. Jones, 427 F.3d at 992. Reilly argues that because Ezzell was a member of the interview panel, and therefore had some decision-making authority, his statement is direct evidence of discrimination. This argument fails, because the person making the statement must either be expressing his own racial animus, and not someone else's, or have an objective basis for believing it.

Reilly relies on Jones to support his contention that Ezzell's statement is direct evidence. In Jones, the plaintiff applied for but was denied a job at a casino. He presented the testimony of Lesley Mims and Sam Thomas to demonstrate that race was the reason. Mims testified that either Ken Lambert, the manager of the poker room, or Lambert's assistant had said that "good old white boys don't want blacks touching their cards in their face." Jones, 427 F.3d at 993. Thomas testified that Lambert said he had "been told not to hire too many blacks in the poker room." Id. The district court granted summary judgment for the employer on the basis that this testimony required too many inferences to qualify as direct evidence. We reversed: Because Lambert had the authority to hire Jones, and his assistant had input in that decision, the testimony, taken in the light most favorable to Jones, required no inference to establish that race played a role in the hiring decision.

Reilly's case is distinguishable. If Ezzell had been speaking for himself

and was giving his reasons for giving the input into the decision, or there was evidence that he had an objective reason to believe Dennis actually thought she had a diversity problem, the outcome would be controlled by Jones.[3]  Reilly, however, presented no evidence that such was the case; instead we are asked to construe Ezzell's hunch as to Dennis's motives as direct evidence of racial animus in the hiring decision.

This process requires an inference that is improper in the direct evidence context.  If Ezzell had instead said Dennis hired Clunis because on the day of the latter's interview, Dennis, eating a carrot, became enamored with the letter "c" and wanted to hire someone whose name began with that letter, we would not credit the testimony unless there was other evidence to support it.  The reason for this is that such evidence produces an insoluble epistemological problem.  We do not presume that anyone has access to the interior motives of another.  Without some evidence that Ezzell's hunch had a basis in something Dennis did or said, we cannot, without presuming, impute to her the motive Ezzell alleged she had.  Nor can we say it expresses Ezzell's own discriminatory views.  Accordingly, the statement cannot constitute direct evidence.

## B.

If direct evidence is not present or is unavailing, a plaintiff may use circumstantial evidence to demonstrate discrimination.  Alvarado, 492 F.3d at 611.  We analyze such cases using the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), id., which establishes a burden-shifting methodology

---

[3] Contrary to the assertion of the district court, remarks by the decision-maker are not the only way to satisfy our direct evidence requirements.  As Jones makes pellucid, the required inference need only show race was a basis of the decision.  Id.  A statement by someone with appropriate input into the decision, even if not the decision-maker, can satisfy that requirement.  Accordingly, Ezzell's participation in the panel interview, and his input into the decision, even though capable of being overridden by Dennis, would be sufficient to satisfy the third factor if the evidence could be read to demonstrate that he had been speaking for himself.

whereby the plaintiff is first required to present a prima facie case of discrimination. The burden of production, not persuasion, then shifts to the employer and requires it "to articulate a legitimate, nondiscriminatory reason for its actions." Id. If the employer meets its burden, the prima facie case dissolves, and the plaintiff must establish that the employer's reason was either (1) a pretext for discrimination or (2) incomplete in that race was still a factor in the decision. Id. We call this second approach the "mixed-motive" method. Id.

### 1.

To establish a prima facie case, Reilly must present evidence that (1) he is within a protected class, (2) he was qualified for the position, (3) he was not selected, and (4) the position was filled by a person not in the protected class. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007). TXU does not dispute that Reilly has satisfied that burden.

### 2.

Because Reilly has made a prima facie case of discrimination, the burden of production shifts to TXU to produce evidence indicating non-discriminatory reasons for its decision. Alvarado, 492 F.3d at 615-16. TXU repeats the reasons the district court relied on, namely that Dennis hired Clunis because she

> (1) had a superior educational background; (2) had a more well rounded and relevant work experience; (3) had work experience involving strategic planning and working with analytical techniques and tools, whereas Reilly's experience related more to transactional and tactical procurement activities; (4) had significant experience with strategic sourcing, which Reilly did not have; (5) had experience with implementing strategic sourcing at large corporations as a consultant, which Reilly had not done; (6) had consulting experience that provided her with valuable experience leading strategic sourcing efforts evaluating processes, spend [sic] categories, and finding opportunities to reduce the total cost of ownership, which

Reilly did not have; (7) had done significant financial modeling, which Reilly had not; (8) had supervisory and management experience, which Reilly did not have; (10) had demonstrated through her previous employment that drive and initiative were strengths, and Reilly had not; (11) had interpersonal, team building, and leadership skills that Reilly did not have, including bringing people together with different interests to achieve a desirable end result for the company; and (12) was a good fit for the Strategic Sourcing Manager position.

Additionally, during her deposition Dennis testified that she "anticipated hiring one or more persons outside the organization with strategic sourcing experience." Clunis, according to Dennis, met both requirements.

3.

Reilly has presented some evidence that race was a factor in the decision-making process. Ezzell's remark, while not direct evidence, is circumstantial evidence of a racial motive. In contrast to direct evidence, we may indulge inferences when reviewing circumstantial evidence. Ezzell's statement need not be true on its own terms for it to carry some weight. Even if Dennis did not think she had a diversity issue, it is reasonable to presume that Ezzell, as a member of the panel, thought she did. From this, it would not be improper for a jury to conclude that Ezzell's belief might have, at the very least, influenced his own assent to hiring Clunis.[4]

Nor can we with confidence foreclose the possibility that Ezzell's perception of Dennis's motives was correct. Perception extends further than words. The record does indicate that, as a panel member, Ezzell was aware that TXU had diversity goals, which Dennis would have had a hand in crafting. It does not require an improper inference to believe that the panel might have had that goal hanging over its head during deliberations. A jury might infer that this explains

---

[4] We need not go so far as to suggest that other panel members held similar views.

the panel's unanimity in choosing a candidate to whom it did not give the highest rating.

For the foregoing reasons, Reilly has presented some evidence that race was a motive in choosing to hire Clunis instead of him for the position. We accordingly do not address whether Reilly was in fact "clearly better qualified" or whether a mixed motive was at work in this case.

The summary judgment is REVERSED, and this matter is REMANDED for further proceedings.