# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-10818
Summary Calendar

SAIDRICK JACKSON

Plaintiff-Appellant

v.

DALLAS COUNTY JUVENILE DEPARTMENT; DOUGLAS VANCE, in his
official and individual capacity

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-264

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Saidrick Jackson appeals the district court's grant of the defendants'
motion for summary judgment. We AFFIRM.

## I. FACTS AND PROCEEDINGS

The Dallas County Juvenile Department (the "Department") employed
Jackson in February 1989 as a detention officer at the Dallas County Juvenile

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Detention Center (the "Detention Center"). In September 2004, Jackson received an unsatisfactory performance evaluation from his supervisor, Michael Jett. Both Jackson and Jett are black. Jackson, dissatisfied with the evaluation, exhausted the available appeals process, but was unsuccessful in altering the evaluation. On the morning of February 3, 2005, Rodrick Mitchell, a black security officer stationed in the parking lot of the Detention Center, reported to Douglas Vance, the Superintendent of the Detention Center, that he had observed Jackson puncture a tire on a Jett's car, which was parked in the lot. That incident was videotaped. Mitchell followed up the report with a formal incident report.

Later that morning, Vance met with Jackson and the Director of Human Resources. Vance informed Jackson of Mitchell's report and the videotape of the incident. Vance denied vandalizing Jett's tire; instead, he claimed that as he got out of his car that morning, papers flew out of the car and he had to chase the papers down between parked cars to retrieve them. Vance stated that the Department had strong reason to believe that Jackson punctured Jett's tire, notwithstanding Jackson's denial. Vance terminated Jackson and directed him to turn in his identification card. An officer from the Sheriff's Department arrived, arrested Jackson, and transported him to jail. Jackson was charged with criminal mischief and spent thirty-six hours in jail; ultimately, however, the charge was dropped. The Department filled Jackson's position with Wallace Peel, who is also black.

Jackson appealed his termination and exhausted the Department's administrative procedures; however, at no time during that process did Jackson claim that any racial or retaliatory bias had been involved in his termination. Once his administrative appeal was final, he filed suit in federal court in February 2006, naming the Department and Vance, individually and in his official capacity (collectively, "the Defendants"). Jackson alleged that the

Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2000h-6, and the Civil Rights Acts of 1866 and 1871, as amended, 42 U.S.C. § 1981, by terminating his employment because of his race and in retaliation for his complaints regarding the Department's unlawful employment practices. Jackson also alleged that Vance made defamatory statements that injured Jackson's professional reputation.

The Defendants moved for summary judgment in January 2007, arguing that Jackson failed to establish a prima facie case of racial discrimination; he could not overcome the Defendants' legitimate, nondiscriminatory reason for terminating him; and his state-law claim against Vance failed as a matter of law. The magistrate judge filed a report and recommendation to grant summary judgment for the Defendants, finding that Jackson had failed to establish a prima facie case for racial discrimination or retaliation and, alternatively, that Jackson failed to show that the Defendants' actions were a pretext for discrimination. After retaining jurisdiction over the remaining pendant state-law claim, the magistrate judge also recommended that the district court grant summary judgment in favor of the Defendants, finding that Vance was protected from liability for defamation by qualified privilege. Because Jackson did not object to the magistrate judge's report and recommendation, the district court reviewed the magistrate judge's findings for plain error. It adopted the magistrate judge's report and recommendation, and granted summary judgment to the Defendants for all claims. Jackson appeals.

## II. STANDARD OF REVIEW

Generally, this court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). However, here we may review the district court's decision only for plain error because Jackson failed to object timely to the magistrate judge's report and recommendation,

which was adopted by the district court in its summary judgment ruling.  See Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## III.  DISCUSSION

### A.    Jackson's Title VII and § 1981 Claims

Title VII disallows discrimination in hiring or termination of an individual based on his race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  In cases where no direct evidence exists, we analyze discrimination claims under Title VII using the burden-shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[1]  In cases involving termination for workplace rule violations, an individual must first establish a prima facie case for discrimination.  Id. at 802.  Jackson can establish a prima facie case for discrimination if he can show "that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably."  Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004).  If a prima facie case for discrimination can be established, then the burden shifts to the Defendants to rebut Jackson's case by articulating a legitimate, nondiscriminatory reason for his termination. McDonnell Douglas, 411 U.S. at 802.  If the Defendants present such a reason, then the burden shifts back to Jackson to show that the Defendants' reasons for terminating his employment are not true, but are mere pretexts for

---

[1] The analysis for claims under Title VII and § 1981 employ identical burden-shifting frameworks for evaluating discrimination claims, so we analyze Jackson's claims under both simultaneously.  See Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005).

discrimination, or that the reasons are true, but his race was a motivating factor. Id. at 804–05.

The parties agree that Jackson satisfies the first three requirements to show a prima facie case for discrimination. The parties also agree that Jackson was not replaced by someone outside of his class; however, Jackson argues that he was treated differently than similarly situated counterparts outside of his protected class and was thus subject to disparate treatment. "To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." Wheeler v. BL Dev. Corp., 415 F.3d 399, 406 (5th Cir. 2005) (quoting Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995)).

In his own sworn statement accompanying his opposition to summary judgment, Jackson stated that two other coworkers had committed felonies, but were nevertheless allowed to continue their employment with the Department. Jackson did not present competent evidence regarding the race of the other coworkers or the circumstances of their respective situations; rather, he discussed some of the details only in his opposition to summary judgment. The district court found that Jackson failed to produce any competent evidence, apart from those conclusory allegations, to raise a genuine issue of material fact that he received disparate treatment as compared to other employees of a different race in nearly identical circumstances. After a review of the record, we agree and hold that the district court did not plainly err in finding that Jackson failed to establish a prima facie case for race discrimination and granting summary judgment for the Defendants.[2]

---

[2] Jackson's claims for race discrimination and retaliation fail because he did not make a prima facie case; therefore, the burden does not shift to the Defendants to show a legitimate, nondiscriminatory reason for Jackson's termination or discuss whether Jackson could show pretext for the Defendants' behavior.

Applying the McDonnell Douglas framework to Jackson's claim for retaliation, he must make a prima facie showing that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causual link exists between the protected activity and the adverse employment action." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). Although Jackson presented evidence that he filed grievances to the Department regarding its employment practices, the district court found that the evidence did not contain any details related to any factor to which Title VII applies. Upon review of the record, we agree and hold that the district court did not clearly err in finding that Jackson failed to establish a prima facie case for retaliation and granting summary judgment for the Defendants.

B. Jackson's State-Law Claim

Jackson claims that, under Texas law, Vance is liable to him for defamation. In Texas, an employer is protected from liability for defamation by a qualified privilege "that attaches to communications made in the course of an investigation following a report of wrongdoing [and it] remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate." Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 646 (1995) (citation omitted). To overcome the privilege, Jackson must show that the statement was made with actual malice. See id. "In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." Id. Once a defendant asserts the defense of privilege, the plaintiff

6

must produce clear and convincing evidence of actual malice to survive summary judgment. See ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 442–43 (5th Cir. 1995).

A review of the record reveals that Jackson presented no clear and convincing evidence that Vance communicated to anyone before he met with Jackson that Jackson had vandalized Jett's tire, much less that Vance acted with actual malice. Although Jackson briefed his allegations in his opposition to summary judgment, he presented no competent evidence to support his conclusory allegations. Therefore, we hold that the district court did not plainly err in granting summary judgment in favor of Vance and dismissing Jackson's defamation claim.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.