# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-11611

LINDA K. EATON-STEPHENS,

      Plaintiff – Appellant,

v.

GRAPEVINE COLLEYVILLE INDEPENDENT SCHOOL DISTRICT,

      Defendant – Appellee.

United States Court of Appeals
Fifth Circuit
**FILED**
November 13, 2017
Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:15-CV-582

Before KING, JONES, and ELROD, Circuit Judges.

PER CURIAM:*

      This appeal arises from the district court's grant of summary judgment in favor of Grapevine Colleyville Independent School District on all of Linda Eaton-Stephens's claims under Title VII, the Americans with Disabilities Act, and the Family and Medical Leave Act. While we agree the district court unduly discredited parts of Eaton-Stephens's deposition testimony, even considering that evidence we conclude that Eaton-Stephens cannot show there

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-11611

is a genuine issue of material fact that would preclude summary judgment, and therefore, we AFFIRM the district court's judgment.

## I.

Grapevine Colleyville Independent School District employed Linda Eaton-Stephens, an African-American woman, as a counselor at Heritage Middle School from 2005 to 2014. Eaton-Stephens was the only black employee at the school. In 2013, Cheryl Harrison, a teacher at the school, was hired as the assistant principal. Upon Harrison's hiring, Eaton-Stephens informed Principal Pete Valamides that she believed Harrison was prejudiced against non-white students and faculty because Harrison had ignored her during previous encounters. Eaton-Stephens also testified in her deposition that another counselor, Marsha Fields, called her "the little black counselor" and that when she told Valamides about the incident, his response was "fix it." According to Eaton-Stephen's testimony, Valamides had intervened on behalf of other employees who raised non-race-related complaints. Eaton-Stephens testified that this incident was part of a pattern of increasing friction with Fields and a registrar, Michaelanne Tapp, which had started in 2009 or 2010.

During the 2013–2014 school year, Eaton-Stephens was granted intermittent leave under the Family and Medical Leave Act (FMLA) due to migraine headaches. During that school year in early 2014, there was an incident at a parents' night where Fields chastised Eaton-Stephens about her use of the copier in front of the parents. Eaton-Stephens testified that following that incident Fields told her, "Don't worry. I'll get you." The next day, Becky Lamb, an assistant to the School District's human resources executive director, Gema Padgett, came to the school and took possession of Eaton-Stephens's district-assigned laptop. Padgett and Fields were investigating an allegation that Eaton-Stephens was taking online college courses for Michael Capeda, a technical support employee of the School

No. 16-11611

District.  If true, the allegations against Eaton-Stephens would violate School District policies and the Texas Educator's Code of Ethics.  Eaton-Stephens testified she believed the report that spurred the investigation originated with Fields and Tapp as retaliation for the parents' night incident.  Padgett filed an affidavit stating, after finding two writing assignments under Capeda's name on Eaton-Stephen's laptop, that Eaton-Stephens admitted to writing and submitting one of the papers online.  Eaton-Stephens testified that she explained to Padgett and Lamb that she only tutored Capeda and critiqued his papers.

At the conclusion of the investigation, Eaton-Stephens testified that Padgett and Lamb gave her two documents: a letter for administrative leave and a termination letter.  Eaton-Stephens initially signed the administrative leave letter, but after further reflection and because she believed any investigation would biased, she subsequently sent a resignation email to prevent what she believed to be an inevitable termination from harming her job prospects.

Eaton-Stephens filed a lawsuit against the School District, and in her first amended complaint, she alleged claims for racial discrimination, discrimination based on a disability, and retaliation.  The district court granted summary judgment for the School District on all claims.  Eaton-Stephens timely appealed the judgment.

## II.

We review a district court's decision on summary judgment *de novo*. *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002).  Summary judgment is proper only where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).  We "must view the evidence in the light most favorable to the party

3

No. 16-11611

opposing summary judgment." *Porter v. Houma Terrabonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942 (5th Cir. 2015) (footnote omitted). However, conjecture, conclusory allegations, unsubstantiated assertions, and speculation are not adequate to satisfy the non-movant's burden on summary judgment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

## III.

Eaton-Stephens argues that the district court failed to give proper weight to her deposition testimony and therefore improperly granted summary judgment for the School District on her claims. We agree that the district court unduly discredited some of Eaton-Stephens's deposition testimony as conclusory. "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone." *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (unpublished) (citing *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 513 (5th Cir. 1999)). Even if self-serving, a party's own affidavit containing factual assertions based on firsthand knowledge is competent summary judgment evidence sufficient to create a fact issue. *Id.* at 443. Eaton-Stephens's testimony that Fields called her "the little black counselor" and that Valamides, in reference to that statement, told her to "fix it," is non-conclusory evidence that should have been considered by the district court. However, other statements by Eaton-Stephens in her deposition were conclusory, such as her allegations that Harrison was prejudiced against non-white students and faculty, or that Fields and Tapp treated her poorly because she was black. The district court properly identified these conclusory statements as non-competent summary judgment evidence.

Eaton-Stephens also argues she should have received a spoliation inference because her computer's contents were erased, and that, because the School District's policy and rules required retention of the contents for several

4

years, the only conclusion was that the action was taken in bad faith. Our cases indicate a violation of a rule or regulation pertaining to document retention is not *per se* bad faith and Eaton-Stephens cites no authority in support of such a *per se* bad faith rule. *See*, *e.g.*, *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (holding the plaintiff bears the burden to establish the defendant acted in bad faith and allowing the defendant to present evidence showing there was an innocuous explanation where documents subject to federally mandated retention were destroyed). We decline to adopt a *per se* rule here. As such, Eaton-Stephens has not met her burden to show bad faith where the only evidence she put forth in support of her claim of bad faith was the alleged violation of School District policy and rules. The district court, therefore, did not err in declining to find Eaton-Stephens was entitled to an adverse inference due to spoliation of evidence.

Having determined that the district court improperly discredited some of Eaton-Stephens's testimony as conclusory but properly declined to grant her an adverse inference for spoliation, we turn to whether it was error for the district court to grant summary judgment on Eaton-Stephens's claims. Three of Eaton-Stephens's claims are properly raised for consideration on appeal[1]: (1) Title VII disparate treatment; (2) Title VII hostile work environment; and (3) whether a FMLA claim was sufficiently pleaded.

---

[1] On appeal, Eaton-Stephens does not challenge the district court's grant of summary judgment on her Title VII disparate impact claim or her Americans with Disabilities Act (ADA) claim beyond merely mentioning that judgment should not have been granted on the claims. Those claims, therefore, are forfeited. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (holding that mere mention of a legal theory is not sufficient to raise the claim on appeal and requiring that the relevant legal standards and authority supporting the argument be addressed in the briefing to properly raise a claim). We also hold that under the *Scroggins* standard, Eaton-Stephens forfeited her Title VII retaliation claims because nearly every mention of the retaliation claim in her briefing is in the FMLA context and the Title VII retaliation claims are not sufficiently briefed for our consideration.

No. 16-11611

As to Eaton-Stephens's disparate impact claim, she argues that Fields's "little black counselor statement" is direct evidence of discrimination by the School District. We disagree. A statement is direct evidence of discrimination if it is "(1) related to the protected class of person of which the plaintiff is a member, (2) proximate in time to the employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." *Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008) (unpub.) (citing *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)). Fields was not a person with authority over any employment decision regarding Eaton-Stephens. Even if Eaton-Stephens orally reported Fields's statement to Valamides, who may have had that authority, we would be required to make too many inferences to conclude any adverse employment decision was based on that statement.

If direct evidence is unavailable to prove discrimination, a plaintiff can show intentional discrimination based on race through circumstantial evidence. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). We analyze a claim based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework (1) a plaintiff must show a *prima facie* case of intentional discrimination; (2) if the plaintiff proves a *prima facie* case, the burden shifts to the employer to proffer a legitimate non-discriminatory reason for termination; and (3) the plaintiff then bears the burden to show the employer's reason was either pretext for discrimination or that even if true, race was still a motivating factor in the decision. *Id.* The School District does not dispute that Eaton-Stephens has established a *prima facie* case. The legitimate non-discriminatory reason proffered by the School District for the investigation of Eaton-Stephens, which subsequently led to her resignation, was the allegation of academic fraud on behalf of Capeda. Even

6

assuming that Eaton-Stephens did not write the papers, she still has not produced evidence showing the School District's investigation of her was motivated by race. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 580 n.2 (5th Cir. 2003) ("a plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action"). Fields and Tapp are not persons who would have authority to take adverse employment actions against Eaton-Stephens. Any of Eaton-Stephens's allegations regarding persons who might have authority to take adverse employment against her, such as Valamides, Harrison, Padgett, or Lamb, are conclusory.[2] Accordingly, there is no evidence that would enable a jury to disbelieve that academic fraud motivated the investigation and that race instead was the real motive for the investigation.

Turning to Eaton-Stephens's Title VII hostile work environment claim, we hold that summary judgment was proper because Eaton-Stephens cannot prove a *prima facie* case. A *prima facie* case requires Eaton-Stephens to show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the School District knew or should have known of the harassment and failed to take prompt remedial action. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (stating the standard for a hostile work environment *prima facie* case). The only

---

[2] Eaton-Stephens alleges that Valamides told her to "fix it" in regards to her complaint about Fields's race-based statement, but has not produced evidence showing that Valamides took or sought any adverse employment action against her because of her race or had any role in the investigation. She alleges Harrison was prejudiced against non-white students and faculty, but does not provide any basis for this belief other than Harrison's perceived unfriendliness to her. In addition, Eaton-Stephens alleges Padgett and Lamb were rude to her during the investigation and she felt that she "had been placed as a target and they had already decided that [she] was guilty." However, Eaton-Stephens does not state any non-speculative reason for her belief that these actions were because of her race.

incident that Eaton-Stephens's alleges that survives the third prong—that the harassment be based on race—is the incident where Fields allegedly called her "the little black counselor." Poor treatment without more is not sufficient to show harassment based on race, even if Eaton-Stephens believes race to be the motivating factor for the poor treatment. *See id.* at 269 (holding that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the non-movant's burden on summary judgment).

As to "the little black counselor" incident, under the fourth prong this comment would not be objectively or subjectively severe or pervasive enough to alter the terms or conditions of Eaton-Stephens's employment. *Compare Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652 (5th Cir. 2012) (holding that a plaintiff being called a racially derogatory term and seeing a poster or letter that was derogatory about Hispanics was not sufficient to support a hostile work environment claim), *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013) (unpub.) (affirming summary judgment on hostile work environment claim where, although there was evidence that coworker used the word "ni—r" in the plaintiff's presence, it was an isolated instance and not severe or pervasive enough to support a hostile work environment claim), *and Mosley v. Marion Cty.*, 111 F. App'x 726, 728 (5th Cir. 2004) (unpub.) (holding that evidence of three incidents involving racial slurs was insufficient to support a hostile work environment claim), *with E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400–01 (5th Cir. 2007) (holding there was sufficiently pervasive and severe harassment based on national origin where employee was regularly subjected over a one-year period to being called "Arab," "Taliban," being told to go back he came from, and he received a written warning that said he was acting like a "Muslim extremist"), *and Walker v. Thompson*, 214 F.3d 615, 626–27 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53 (2006) (holding that

African–American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII). Accordingly, Eaton-Stephens has not produced evidence sufficient to support a *prima facie* case of a racially hostile work environment.

Eaton-Stephens also argues the district court erred in concluding that she did not properly plead a FMLA claim. A plaintiff is required to give "a short and plain statement of the claim showing that the pleader is entitled to relief" to give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The district court correctly found that "[w]hile [Eaton-Stephens] refers to the FMLA in her First Amended Complaint, [Eaton-Stephens] does so only as a basis for [her] claim of failure to accommodate under the ADA." ROA.762. As such, Eaton-Stephens did not properly plead a FMLA claim. Even assuming *arguendo* that the FMLA claim was properly pleaded, Eaton-Stephens fails to produce evidence showing any action by School District employees interfered with her FMLA leave. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (citation omitted) ("To prove an interference claim, a plaintiff must at least show that the defendant interfered with, restrained, or denied his exercise or attempt to exercise FMLA rights, and that the violation prejudiced him."). Eaton-Stephens testified that Valamides discouraged her from taking FMLA leave and that her co-workers harassed her for taking leave, but does not testify that she took less leave because of these actions. Therefore, any error in concluding Eaton-Stephens failed to properly plead an FMLA claim would be harmless, because she did not meet her burden to produce evidence that there was actual interference with her FMLA rights.

No. 16-11611

IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for the School District on all of Eaton-Stephens's claims.