# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-11211

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2019

Lyle W. Cayce
Clerk

STEPHANIE WARREN,

>    Plaintiff – Appellant,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, also known as Fannie Mae,

>    Defendant – Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, WIENER, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Stephanie Warren challenges the district court's grant of summary judgment on her defamation claim against Fannie Mae and its evidentiary decision to exclude a statement of another Fannie Mae employee. Because the district court did not err in granting summary judgment or abuse its discretion by excluding the statement, we AFFIRM.

I.

Fannie Mae is a private, federally chartered corporation that employs sales representatives to manage foreclosed properties that it holds around the country. Warren was one such sales representative. In 2013, Warren was one

No. 18-11211

of four employees fired after an internal investigation concluded that she had violated the company's Code of Conduct and Conflicts of Interest Policy by working with an outside broker who was not approved by Fannie Mae and concealing it from her supervisor.

After being fired, Warren sued Fannie Mae, raising claims of racial discrimination under Title VII and Texas law, as well as defamation under Texas law. The district court had federal question jurisdiction over the Title VII claim and supplemental jurisdiction over the Texas law claims.[1]  *See* 28 U.S.C. §§ 1331, 1367.  The district court dismissed the defamation claim on procedural grounds based on the district court's reading of an arbitration policy and granted summary judgment to Fannie Mae on the discrimination claims.

In the first appeal, we affirmed the district court's summary judgment on the discrimination claims but reversed and remanded the procedural dismissal of the defamation claim.  *Warren v. Fed. Nat'l Mortg. Ass'n*, 733 F. App'x 753, 760–66 (5th Cir. 2018) (unpublished) ("*Warren I*").  We also affirmed two of the district court's evidentiary rulings, including, as relevant to this appeal, the exclusion of the declaration of Keitha Jefferson (another Fannie Mae employee).  *Id.* at 759–60.

On remand, the district court granted summary judgment to Fannie Mae on Warren's defamation claim because Warren failed to produce evidence that Fannie Mae had made any defamatory statement related to Warren's receiving kickbacks, and, to the extent that Fannie Mae had made any defamatory statement related to Warren's concealing her actions, Fannie Mae was entitled to a qualified privilege under Texas law.  As to receiving kickbacks, the district

---

[1] Warren originally filed this lawsuit in Texas state court with both the discrimination and defamation claims based in state law; however, after Fannie Mae removed the case to federal court on the basis of diversity jurisdiction, Warren amended her complaint to add a federal claim under Title VII.

No. 18-11211

court held that Warren's allegation that the investigative report defamed her failed because the report, on its face, explicitly concluded that she did not receive kickbacks. As to concealing her actions, the district court held that, to overcome Fannie Mae's qualified privilege, Warren was required, but failed, to adduce evidence that Fannie Mae either acted with malice or distributed the report to persons without a valid interest. Moreover, the district court once again concluded that Jefferson's declaration was inadmissible.

Warren timely filed a second notice of appeal, challenging the summary judgment and the exclusion of Jefferson's declaration. We have jurisdiction pursuant to 18 U.S.C. § 1291.

II.

We review a district court's grant of summary judgment *de novo*. *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it would affect the outcome of the case, and a dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (citation omitted). Evidence at the summary judgment stage must be viewed in the light most favorable to the non-moving party, and reasonable inferences must be drawn in that party's favor. *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018).

We review a district court's decision to exclude evidence in connection with a summary judgment motion under the abuse of discretion standard. *Maurer v. Indep. Town*, 870 F.3d 380, 383 (5th Cir. 2017). A district court abuses its discretion when an evidentiary ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Hinojosa v. Butler*, 547 F.3d 285, 292 (5th Cir. 2008).

3

No. 18-11211

## III.

In this appeal, Warren challenges: (1) the summary judgment against her on her defamation claim; and (2) the exclusion of Jefferson's declaration. We address each argument in turn.

### A.

Fannie Mae contends that the district court did not err in granting summary judgment on Warren's defamation claims because: (1) Warren failed to present a *prima facie* case; and (2) even if Warren had presented a *prima facie* case, she failed to overcome Fannie Mae's qualified privilege under Texas law.

### 1.

We begin by addressing whether Warren presented a *prima facie* case for her defamation claim. As articulated by the Supreme Court of Texas,

> [t]he elements of a prima facie case for defamation are: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se.

*Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017); *accord WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). In defamation suits brought by private individuals, truth is an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex. 1995).

Warren alleges that there were two types of defamatory statements made about her: the investigative report itself and comments allegedly made by other Fannie Mae employees. As to the investigative report, Fannie Mae contends that Warren has not met her burden as to requirement (2)—establishing that the statement was actually defamatory concerning her. As to the comments allegedly made by other employees, Fannie Mae contends that

4

Warren has not met her burden as to requirement (1)—establishing that the statements were actually published.

A false statement can be defamatory under Texas law if it injures a person's reputation. *See Bedford*, 520 S.W.3d at 905; *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013); Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (2013). *See also* Nunnally & Franklin, 1 Tex. Prac. Guide Torts § 1:33 (Dec. 2018 update) (discussing defamation under Texas law). Whether an alleged statement is defamatory depends on how a person of ordinary intelligence would perceive the statement in light of the surrounding circumstances. *See Carr v. Brasher*, 776 S.W.2d 567, 569–70 (Tex. 1989). "Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court." *Id.* at 569. Only if the court determines the language to be "ambiguous or of doubtful import" should a jury determine what effect the statement would have on an ordinary person. *See Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). Texas law provides for liability if the "gist" of a collection of statements conveys a false and defamatory impression, even if each statement is literally correct. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 116–17 (Tex. 2000).

Under Texas law, false statements are published if they are communicated, either in writing or orally, "to some third person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (citation and quotation marks omitted).

Warren asserts that there were three aspects of the investigative report that defamed her. First, she asserts that the gist of the investigative report was that she received kickbacks. Second, she asserts another gist of the report was that she caused financial loss to the company. And third, she asserts that

the report's conclusion that she attempted to conceal her association with the outside broker was defamatory.

We agree with Fannie Mae that Warren failed to establish genuine disputes of material fact as to the first and second aspects in which she contends the investigative report was defamatory. Her most-emphasized assertion is that the gist of the report accused her of receiving kickbacks. However, as the district court observed, that is not a reasonable reading of the report. Indeed, the report affirmatively stated the opposite, concluding that there was "no evidence that Ms. Warren had accepted gifts or other benefits from [the outside broker]." Therefore, we hold that a person of ordinary intelligence could not read the report and reasonably conclude that its gist was that Warren received kickbacks. Similarly, we also hold that a person of ordinary intelligence could not reasonably conclude that the report accused Warren of causing financial loss to the company, as nothing in the report discussed financial losses.

That leaves Warren's contention that the investigative report defamed her by accusing her of concealing her association with the outside broker. Truth is a defense against a charge of defamation, and substantial evidence in the record—including e-mail exchanges between Warren and the outside broker—supports the conclusion that Warren did in fact attempt to conceal that association. However, Warren presented as contrary evidence her own sworn declaration denying that she attempted to conceal the association. Construing the evidence in the light most favorable to the non-moving party, Warren may have raised a genuine dispute of material fact on this point sufficient to survive summary judgment. However, even if Warren had made her *prima facie* case on this point, it is defeated by Fannie Mae's qualified privilege. *See infra* Section III.A.2.

6

No. 18-11211

Turning to the comments allegedly made by other employees at Fannie Mae, Warren asserts that her own testimony "creates the inference that allegations that [she] took kickbacks were . . . repeated to Ray Donovan by Shirley Small [employees at Fannie Mae], and forwarded to his wife at Freddie Mac." She asserts that "[s]uch allegations have been widely republished within the industry." She also asserts that "Ms. Donovan [an employee at Freddie Mac] likely had her husband [an employee at Fannie Mae] inquire, and retrieve the name of Ms. Warren as someone who allegedly received kickbacks." She further asserts that "Donovan apparently summarized the accusations against Warren as her receiving kickbacks," but later says that "[r]egardless of whether the allegations of kickbacks routed through Donovan, they clearly started at Fannie Mae, and landed at Freddie Mac. Warren was unable to even get interviews at Freddie Mac."

We agree with Fannie Mae that Warren failed to establish a *prima facie* case as to whether these allegedly defamatory comments were published. Warren does not offer any evidence, other than her own speculation, as to what these other people allegedly said, when and where they allegedly made the statements, and to whom they are alleged to have made the statements. That is not enough to survive summary judgment.

Furthermore, Warren does not raise a genuine dispute of material fact as to whether those employees would have been acting within the course and scope of their employment when they allegedly made the statements. *See Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 578 (Tex. 2002) (an employer can only be liable for defamatory statements made by its employees when "the act is done while the employee is acting within his general authority and for the benefit of the employer"). Warren offers no evidence that any of the employees she named had managerial authority over her, or that their employment would have required them to discuss her termination in any way.

7

No. 18-11211

For those reasons, summary judgment was appropriate for most aspects of Warren's defamation claim because she largely failed to make a *prima facie* case. However, to the extent that she did make a *prima facie* case by alleging that the investigative report defamed her by accusing her of concealing her association with the outside broker, her defamation claim is defeated by Fannie Mae's qualified privilege as discussed below.

2.

Even assuming that Warren had made a *prima facie* case for all the aspects of her defamation claim, summary judgment was proper because she failed to overcome Fannie Mae's qualified privilege under Texas law.

"Under Texas law, '[a] communication on a subject in which the author or the public has an interest, or with respect to which the author has a duty to perform to another owing a corresponding duty, may constitute a qualified or conditional privilege.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 630 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). *See also* Nunnally & Franklin, 2 Tex. Prac. Guide Torts § 9:290 (Dec. 2018 update) (discussing qualified privilege against defamation claims under Texas law). "Whether a conditional or qualified privilege exists is a question of law for the court." *Frakes v. Crete Carrier Grp.*, 579 F.3d 426, 430 (5th Cir. 2009) (quoting *E. Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 60 (Tex. App.—Tyler 1998, pet. denied)).

Qualified privilege protects employers from defamation liability for communications made while investigating alleged wrongdoings, so long as the communications are made only to persons with a valid interest. *Jackson v. Dallas Cty. Juvenile Dep't*, 288 F. App'x 909, 912 (5th Cir. 2008) (unpublished) (citing *Randall's*, 891 S.W.2d at 646). That privilege can be overcome if the plaintiff shows that the statement was made with actual malice, which means

knowledge of its falsity or reckless disregard for the truth. *Id.* at 912–13 (citing *Randall's*, 891 S.W.2d at 646). Malice can be shown by the omission of facts if the publisher knew or strongly suspected that the omission would create a false and defamatory impression. *See Turner*, 38 S.W.3d at 120–21. To survive a summary judgment motion based on qualified privilege in federal court, the plaintiff has the burden of establishing malice by clear and convincing evidence. *See Jackson*, 288 F. App'x at 913 (citing *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 442–43 (5th Cir. 1995)).

To overcome Fannie Mae's qualified privilege, Warren therefore needed to raise a genuine dispute of material fact as to whether Fannie Mae's investigative report was made with actual malice or excessively distributed. *See id.* at 912–13 (citing *Randall's*, 891 S.W.2d at 646). Warren argues that there was both actual malice and excessive distribution, and we address each contention in turn.

As to actual malice, Warren argues that the investigative report evidences malice because the investigator "concealed information from her report that would have cleared Warren." To support her argument, Warren points to a variety of alleged omissions from the report which she contends are evidence of a "smear job." Those alleged omissions include an e-mail between Warren and the outside broker, some handwritten notes from the investigator's interview of Warren's supervisor, and an assortment of other data points not included in the investigative report. Warren asserts that because these items did not make it into the investigative report, there is "a fact issue that [the investigator] had been given orders to find some excuse to fire Warren," and that "[c]learly, [the investigator] and Fannie Mae were on notice that the allegations within the investigative report were substantially false, and were simply trying to justify terminating Warren anyway."

No. 18-11211

Warren's argument that she established malice by pointing to things that the investigator left out of the report is unavailing. *See Duffy*, 44 F.3d at 313 ("Negligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." (citing *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 924 (Tex. App.—Corpus Christi 1991, writ dism'd w.o.j.))); *see also Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002) ("[Actual malice] requires more than a departure from reasonably prudent conduct.  Mere negligence is not enough. There must be evidence that the defendant in fact entertained serious doubts as to the truth of his publication[.]" (citations and quotation marks omitted)).  As the district court observed, none of the omissions that Warren points to establish that the investigator knew that the report was false or recklessly disregarded the truth.  Moreover, Warren's assertion that there is "a fact issue that [the investigator] had been given orders to find some excuse to fire Warren" is without any basis in the record whatsoever.

As to excessive distribution, Warren asserts that Fannie Mae's qualified privilege was waived because "[t]he false reports of Warren taking kickbacks were circulated at Fannie Mae and in the community, and conflicting testimony showed that Small communicated this information to Ray Donovan [Fannie Mae employees], who then passed it to his wife [a Freddie Mac employee]," and that "[n]either Small nor Donovan had legitimate need to know the information."

As the district court observed, Warren offers no evidence, other than her own speculation, that any person without a valid interest received the report or was made aware of its findings.  She does not point to any evidence in the record that the report came into the possession of Small, Donovan and/or other Fannie Mae employees who she asserts had no valid interest in the information.  Furthermore, as the district court observed, this assertion

10

contradicts her other assertions; for, if these employees had improperly accessed the report (as she alleges), it would seem unlikely that they told other people she was accepting kickbacks (as she also alleges), as the report expressly concluded that there was no evidence that she accepted kickbacks.

For those reasons, Fannie Mae is entitled to summary judgment because of its qualified privilege under Texas law.

## B.

Next, we address whether the district court abused its discretion by excluding Keitha Jefferson's declaration.  To explain its conclusion that Jefferson's declaration was inadmissible, the district court cited its ruling in a companion case, *Sandidge v. Federal National Mortgage Ass'n.*, 2017 WL 2362016 (N.D. Tex. May 31, 2017).  In that case, the portion of Jefferson's statement indicating that she had heard from someone named Marilyn Bynum-Wilson[2]—who heard from other unnamed employees— "statements to the effect that" Warren and another Fannie Mae employee were fired for improperly accepting gifts was deemed inadmissible hearsay.  *Id*. at \*9.  The rest of the declaration was deemed to have such slight probative value that it "would confuse the issue rather than resolve it."  *Id*.

Warren contends that there are three reasons why Jefferson's declaration should have been held admissible.  First, she argues that Jefferson's statement about what Bynum-Wilson said was not hearsay because it was not being offered to prove the truth of the matter asserted.  Second, she argues that the statement is admissible under the Federal Rule of Evidence 801(d)(2)(D) hearsay exception for a statement made by an employee of an opposing party on a matter within her scope of employment.  And third, she

---

[2] Fannie Mae observes that Warren does not offer any evidence to establish who Bynum-Wilson is or that she was even an employee of Fannie Mae.

argues that other portions of Jefferson's statement are admissible under Federal Rules of Evidence 608, 405, and 803(21) because they evidence that the investigators "had poor reputations for truthfulness."

We agree with Fannie Mae that the district court did not abuse its discretion by excluding Jefferson's declaration.  First, the declaration was partially hearsay.  Contrary to Warren's assertion, Jefferson's statement about what Bynum-Wilson allegedly said other people allegedly said is, in fact, being offered for the truth of the matter asserted.  This is hearsay within hearsay, so both levels must satisfy an exception.  *See Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 280 (5th Cir. 1991).  Even if Jefferson's statement about what Bynum-Wilson allegedly said could be a verbal act on the part of Bynum-Wilson, that does nothing to advance Warren's claim against Fannie Mae.  *See Overton v. United States*, 403 F.2d 444, 447 (5th Cir. 1968) (discussing the verbal act doctrine).  To advance Warren's claim against Fannie Mae, it matters whether Bynum-Wilson was truthful as to what she heard the unnamed employees say.  *See Wells v. Shop Rite Foods, Inc.*, 474 F.2d 838, 839 (5th Cir. 1973) (excluding as hearsay, in a defamation suit against the employer, an employee's statement that other employees told him that they heard the plaintiff was fired for stealing).  Therefore, that portion of Jefferson's declaration is hearsay for the purposes of this case.

Second, as for that portion of Jefferson's declaration's being admissible under a hearsay exception because it is an opposing party admission by an employee acting within her scope of employment, Warren has not established that Jefferson, Bynum-Wilson, or any other employee was acting within their scope of employment when allegedly discussing Warren's termination.

And third, as for the other parts of Jefferson's declaration's being admissible because they state Jefferson's "belief" that the investigators had poor reputations for truthfulness, we have already held that the district court

12

did not abuse its discretion by excluding those statements because they are "merely conclusory." *See Warren I*, 733 F. App'x at 760. Accordingly, the district court did not err by excluding them under Rule 403 in this case.

For those reasons, the district court did not abuse its discretion by excluding Jefferson's declaration.

\* \* \* \*

The summary judgment is AFFIRMED.