# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 24, 2020

Lyle W. Cayce
Clerk

No. 19-20818

Khalidah Jy Smith,

*Plaintiff—Appellant*,

*versus*

Wal-Mart Stores, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:17-CV-2579

Before Higginbotham, Smith, and Dennis, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Mariely Alamo, a Wal-Mart employee, incorrectly identified Khalidah Smith as a shoplifting suspect in a photo lineup. After police realized the mistake and dropped charges, she brought several claims against Wal-Mart, including defamation. The district court granted summary judgment for Wal-Mart against all of Smith's claims. She appeals only the summary judgment on her defamation claim. We affirm.

I.

In May 2016, two suspects tried to steal two televisions and a bedsheet

No. 19-20818

from the Wal-Mart store where Alamo worked as an Asset Protection Manager. Alamo and her colleague approached the shoplifters after they exited the store without paying. The suspects abandoned the merchandise, fled into a waiting car, and quickly departed. Alamo did not pursue the suspects but recorded the car's license plate number.

Per Wal-Mart policy, Alamo contacted law enforcement, providing the plate number and a description of the suspects. Later that day, a police officer interviewed the driver and a passenger, each of whom confirmed having driven two friends, whom they named, to and from the Wal-Mart. The officer's search for the female name yielded only one result—Smith's driver's license. The officer showed a picture of Smith's license to the driver and passenger, who both stated that the pictured Smith was one of the friends they had driven to Wal-Mart.

Six days later, the police conducted a photo lineup. Alamo and her colleague viewed the lineup that included Smith's picture. Alamo identified Smith as the shoplifting suspect. Although Wal-Mart had video footage of the suspects in the store, Alamo did not review it before identifying Smith, testifying later that a review was unnecessary because she could already remember the suspect.

Smith was charged in June 2016 with theft, first learning of the incident when she received a summons by mail. She surrendered and was released the same day on bail. A few days later, the District Attorney dismissed the charges after discovering that Smith was wrongly identified as a suspect.

Smith sued the Harris County Sheriff's Office and Wal-Mart in state court, alleging malicious prosecution, false arrest, defamation, negligence, and gross negligence. After the court dismissed the Sheriff's Office, Wal-Mart removed to federal court based on diversity jurisdiction.

The district court granted summary judgment on all of Smith's

No. 19-20818

claims. Smith appeals only as to defamation.

II.

A.

Smith contends that Wal-Mart defamed her when its employee incorrectly identified her in the photo lineup. To establish a defamation claim under Texas law, a plaintiff must prove that "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). A false statement accusing a person of a crime is defamation *per se*, so a plaintiff in such a case need not prove damages. *Pitts & Collard, L.L.P. v. Schecter*, 369 S.W.3d 301, 329 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Because Smith is a private individual, the required level of fault to satisfy the third element would normally be negligence. *Bedford*, 520 S.W.3d at 904. But Wal-Mart invoked the defense of qualified privilege, so the standard is "actual malice." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). The parties do not dispute that the privilege applies here.[1]

Under Texas law, qualified privilege is an affirmative defense against a defamation claim. *French v. French*, 385 S.W.3d 61, 73 (Tex. App.—Waco 2012, pet. denied). "To be entitled to the qualified privilege, the person making the statement must make it in good faith on a subject matter in which the

---

[1] The district court did not decide whether Smith established a *prima facie* case of defamation; instead, it proceeded to the question of qualified privilege. Wal-Mart also does not address whether Smith established a *prima facie* case of defamation, contesting only the qualified-privilege question.

speaker has a common interest with the other person, or with reference to which the speaker has a duty to communicate to the other." *Grant v. Stop-N-Go Mkt. of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Reporting a crime to the police falls within the qualified privilege. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 610 (Tex. App.—San Antonio 2018, pet. denied).

To overcome the qualified privilege and prevail in a defamation case, the plaintiff must prove that the defendant made the relevant statement with actual malice. *Randall's*, 891 S.W.2d at 646. A speaker makes a statement with actual malice if it is with "knowledge of its falsity or with reckless disregard as to its truth." *Id.* Malice is a subjective standard: The "crux of the actual-malice inquiry is whether the defendant subjectively has significant doubt about the truth of his statements at the time they are made." *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 431 (5th Cir. 2009) (cleaned up).

## B.

"To survive a summary judgment motion based on qualified privilege in federal court, the plaintiff has the burden of establishing malice by clear and convincing evidence." *Warren v. FNMA*, 932 F.3d 378, 386 (5th Cir. 2019). Smith "therefore need[s] to raise a genuine dispute of material fact as to whether" Alamo's identification of her in the photo lineup "was made with actual malice." *Id.* Smith makes several contentions in her claim that there is a genuine dispute of material fact as to whether Alamo made her statement with malice, but none succeeds.

First, Smith claims that a fact finder could determine that Alamo was reckless in identifying her in the photo lineup because Alamo knew the suspect had a facial piercing, while Smith's lineup picture showed no such piercing. Smith further avers that, even though a facial piercing can be removed, it might leave a scar that would be visible in a photo lineup.

No. 19-20818

Smith's contention is unavailing.  There is no evidence in the record regarding the size or prominence of the piercing.  Moreover, it is not readily apparent in a still frame from the video footage of the suspect:  It may have been small enough that it would not leave scarring that is discernible in a photo lineup.  Alamo could easily have been confident in her identification despite the absence of a facial piercing in the photo lineup; thus, Smith's contention fails to show malice.

Similarly, Smith asserts that Alamo identified her with malice because Smith's complexion in the photo lineup is lighter than the suspect's.  Smith bases her assertion on Alamo's testimony that the suspect had a complexion that was similar to or "a little darker" than her own.  Smith asserts that Alamo, who is also black, has a darker complexion than did Smith's picture in the photo lineup, and, thus, there is reason to believe that Alamo harbored serious doubts when she identified Smith.

Smith's contention here, too, fails.  First, the record does not suggest a large discrepancy between Alamo's description of the suspect and her identification of Smith.  At most, Alamo's testimony shows that she believed the suspect's complexion was "a little darker" than her own, while Smith's is "a little lighter."  The perceived difference is small and not enough to show that Alamo had significant doubts about the accuracy of her choice.

Moreover, even if Alamo believed the suspect's complexion was darker than Smith's in the photo lineup, it still would not show that Alamo had significant doubt, given that picture quality and lighting can alter an apparent complexion.  Indeed, Texas courts have noted that complexion in photo lineups can diverge from suspects' actual complexions.  For instance, in *McGee v. State*, No. 14-14-00404-CR, 2015 WL 9598870, at *4 (Tex. App.—Houston [14th Dist.] Dec. 31, 2015, no pet.) (mem. op.), the court observed that lighting affected a person's perceived complexion, stating "our

5

examination of the array reveals that the lighting cast on three other partici-pants makes their complexions appear as light as appellant's and the two re-maining participants do not have such distinctly dissimilar complexions than appellant's . . . ."[2]  Texas courts have acknowledged variations between a person's actual and photographed complexion, finding that such differences do not necessarily render photo lineups unreliable.

Neither does such a small discrepancy here mean that Alamo had sub-stantial doubts about her own memory.  As the record shows, the potential difference in complexion was relatively small, and, even if Alamo did per-ceive a difference in complexion between Smith and her memory of the sus-pect, Alamo easily could have attributed it to normal variations in photograph quality and light exposure.

Smith next contends that Alamo demonstrated malice by failing to review security footage of the suspect before identifying Smith in the lineup. Smith points out that Alamo knew Wal-Mart had such footage and, thus, her failure to review it demonstrated a reckless disregard for the truth.

Smith's contention here also fails.  In her testimony, Alamo explained why she did not review the tapes, stating, "I remember what I saw myself." Moreover, there is no evidence in the record to suggest that Alamo generally reviewed footage before identifying shoplifters.  Such an omission might be negligent, but "the failure to investigate the facts before speaking as a reason-ably prudent person would do is not, standing alone, evidence of a reckless disregard for the truth." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002). Thus, Smith's failure to review the video footage does not show malice.

_____

[2] Similarly, the court held in *Brown v. State*, 64 S.W.3d 94, 100–01 (Tex. App.—Austin 2001, no pet.), that a photo lineup where a suspect's complexion appeared lighter on account of overexposure was not impermissibly suggestive.

Finally, Smith asserts that Alamo's testimony should not be trusted, making a number of attacks on her credibility and contending that there is, therefore, a genuine dispute of fact as to whether Alamo had a reckless disregard of the truth when she identified Smith. None of those attacks demonstrates malice.

First, in an attempt both to undermine Alamo's credibility and to establish malice, Smith points out that Alamo identified Smith in the photo lineup six days after the shoplifting incident. Smith contends that Alamo has conceded that her memory of the suspect by that time was less strong than it was on the day of the event. Smith further observes that, in her testimony, Alamo mistook the time lapse between the shoplifting incident and the photo lineup, initially claiming that they took place on the same day instead of six days apart.

Even if Alamo conceded that her memory was less clear after six days,[3] such an admission would suggest only that perhaps she *should* have been less confident in her identification; it does not show that she actually harbored substantial doubts. Furthermore, it is not relevant to the question of malice that Alamo misremembered the timing of the photo lineup. Indeed, the deposition in which she made that mistake took place nearly three years after the events in question. That she misremembered the timing three years later does not provide evidence that Alamo spoke with malice at the time.

Second, Smith asserts that, because Alamo's team apprehends a high number of shoplifters each month, it is likely that Alamo harbored significant doubts when she identified Smith as a suspect. Smith contends that Alamo's

---

[3] As Wal-Mart points out, Alamo never actually made such a concession about her own memory. She did not say that her memory was less clear six days later—she only agreed in the abstract that a person's memory could be reduced over time.

team catches about sixty shoplifters a month and that, in conjunction with the lapse in time between the incident and the photo lineup, Alamo could not have been confident that she remembered a specific suspect's face.

Smith points to no authority suggesting that an Asset Protection Manager can remember only a very small number of suspects' faces over the course of six days. And even if she had provided authority to suggest that Alamo could not do so, such a showing would merely provide evidence of possible negligence unless Smith could also provide evidence that Alamo actually held "substantial doubts about the truth" of her statement. *Bentley*, 94 S.W.3d at 591.

Third, Smith posits that Alamo's testimony cannot be credited because, as an Asset Protection Manager, Alamo has an incentive to apprehend culprits. Smith points out that Wal-Mart has a policy requiring employees, before assisting in a prosecution, to believe beyond a reasonable doubt that there is enough evidence to prove guilt. That policy, Smith contends, motivated Alamo to express more confidence than she actually felt when reviewing the lineup. Smith asserts that, because Alamo had a strong incentive to protect merchandise and operated under a policy that requires a high degree of confidence before assisting police, there is a high likelihood that she misrepresented her level of confidence.

Smith's contention here is too clever by half. The most plausible inference adduced from Wal-Mart's policy supports Alamo's testimony that she was highly confident in her identification and merely made a mistake. The policy strongly suggests that Wal-Mart seeks to prevent haphazard accusations against shoplifting suspects. Furthermore, as Wal-Mart contends, Alamo had no incentive to identify the wrong suspect, as misidentifications fail to prevent shoplifting and can result in lawsuits. Smith's claim about policy-driven incentives is entirely speculative, and a "mere surmise or sus-

picion of malice does not carry the probative force necessary to form the basis of a legal inference of malice." *Proctor & Gamble Mfg. Co. v. Hagler*, 880 S.W.2d 123, 127 (Tex. App.—Texarkana 1994, writ denied).

Finally, Smith contends that Alamo contradicted herself regarding the clarity of the surveillance video. In her first deposition, Alamo answered in the affirmative when asked whether an expanded image of the suspect would be "clear in color," but in her second deposition she said that pictures become less clear once expanded. Smith contends that that potential discrepancy shows that Alamo was coached between depositions.

Whether the image was clear, however, demonstrates nothing about Alamo's level of certainty at the time she identified Smith in the photo lineup. Indeed, as previously discussed, Alamo did not believe she needed to view the tapes before identifying Smith. Therefore, even if there were a discrepancy in her testimony here, it would not establish malice. At most, a discrepancy about video quality might further indicate that Alamo *should* have reviewed the surveillance footage before assessing the photo lineup. It does not, however, serve as evidence that Alamo actually had substantial doubts when she identified Smith. Thus, none of Smith's assertions raises a genuine dispute of material fact as to whether Alamo made her statement with malice.

The summary judgment is AFFIRMED.