# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2023

Lyle W. Cayce
Clerk

No. 22-10348

Wayne M. Klocke, *Independent Administrator of the Estate of Thomas Klocke*,

*Plaintiff—Appellant*,

*versus*

Nicholas Matthew Watson,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-285

---

Before Richman, *Chief Judge*, and King and Higginson, *Circuit Judges*.

Per Curiam:[*]

The opinion previously filed in this case, *Klocke v. Watson*, No. 22-10348, --- F. App'x ----, 2023 WL 2549762, is WITHDRAWN. The following opinion is substituted therefor:

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10348

In 2016, Thomas Klocke and Nicholas Watson had a tense verbal and written exchange during class at the University of Texas at Arlington. Thomas' father, Wayne Klocke, later brought suit against Watson, alleging that Watson published several defamatory statements concerning Thomas on Facebook and in an email complaint to the University's Dean of Students. However, Klocke failed to bring his defamation claims relating to Watson's Facebook posts within the statute of limitations, and Watson established that, with respect to his email complaint, there was no genuine dispute of material fact as to his affirmative defense of truth. Therefore, the district court did not err in granting summary judgment. We AFFIRM.

**I.**

On May 19, 2016, Thomas Klocke[1] and Nicholas Watson, who did not know one another, sat next to each other in a summer class taught by Professor Dwight Long at the University of Texas at Arlington ("UTA"). According to Watson, he made a comment during class regarding privilege in society, after which Thomas typed into his computer's web browser, "gays should die," and positioned it for Watson to see. Watson responded by typing into his own web browser, "I'm gay." Thomas then pretended to yawn and called Watson a "faggot." Watson then told Thomas that he should leave, and Thomas replied, "You should consider killing yourself." Immediately after this, during class, Watson emailed Professor Long regarding the incident. He also posted on Facebook describing the interaction, writing: "The guy sitting next to me just typed into his computer 'ga;ys [*sic*] should die.' Then told me I was a 'fa**ot' and that I should 'kill myself.' I haven't

---

[1] For ease of reference, we refer to Thomas Klocke by his first name and Wayne Klocke, his father, by his last name.

No. 22-10348

felt this uncomfortable in a long time." Thomas changed seats shortly thereafter.

When class ended, Watson approached Professor Long to discuss what occurred between Thomas and him, and Professor Long recommended that Watson report the incident to student services. Watson went to student services and spoke to Heather Snow, UTA's Dean of Students. Dean Snow requested that Watson submit his complaint in writing, which he did via email.[2] Following this discussion with Dean Snow, Watson posted another update to Facebook explaining the actions being taken by UTA and referring to Thomas as "the student that threatened" him.

---

[2] Watson's email complaint to Dean Snow reads:

Dear Heather,

This is Nicholas Watson. Today, May 19th, during my 8:00 AM organizational strategy course, MANA 4322-001. We had to move classes from 153 to 154 due to a computer issue. At this point, I sat next to the student who was the aggressor, Thomas Klocke.

After commenting about privilege in today's society, Thomas opened up his laptop and typed into his web browser's search bar, "Gays should die."

At which point, I typed into my search bar on my web browser "I'm gay." I was confused and was trying to understand why he was typing and showing me this.

After this, he acted like he was yawning and told me that "well then you're a faggot."

I then told him, "I think you should leave." I felt terribly scared and uncomfortable.

He then told me that "you should consider killing yourself."

I approached my professor, Dr. Dwight E Long, regarding the incident after class. He advised I go to student support services.

I then went to Heather Snow, this email recipient, who advised me further.

-Nicholas Watson

No. 22-10348

Following her meeting with Watson, Dean Snow contacted Daniel Moore, UTA's Associate Director for Academic Integrity, to let him know that she planned to send him a referral from a student "who 'felt threatened and unsafe in class.'" In her email, Dean Snow indicated that she believed it would be appropriate to put into place an interim measure disallowing Thomas from attending class. Moore agreed and, in addition to issuing a mutual no-contact directive between Thomas and Watson, informed Thomas via letter that he was not to attend class during the investigation.

The following day, May 20, 2016, Moore sent Thomas a letter requesting a meeting and explaining that he was being investigated for allegations of "threat" and "harassment" under the UTA Handbook of Operating Procedures. Moore called Thomas after sending the email, and during that conversation Thomas did not dispute the allegations and confirmed that he was familiar with the incident which precipitated the investigation. Moore also interviewed Watson that day, during which Watson repeated the version of events he recounted to Dean Snow and posted on Facebook. According to Moore, "Watson seemed genuinely scared and worried," and Moore "was left with the impression that he [Watson] was emotionally upset and fearful" of Thomas. Moore also spoke with Professor Long, who "reported that he did not witness any altercation," but Moore noted that what Watson reported to Professor Long matched what Watson had reported to him.

On May 23, 2016, Moore met with Thomas. Thomas' father, Wayne Klocke, accompanied him; Klocke stated that he "just wanted to talk with [Moore] for a few minutes" and left shortly thereafter. Thomas and Moore then spoke, and Thomas provided a competing account of his interaction with Watson on May 19. He said that Watson called him "beautiful" and kept glancing at him, so Thomas wrote into his web browser and verbally communicated for him to stop. He denied pretending to yawn and confirmed

that Watson told Thomas to leave, but he denied the statements Watson attributed to him. Thomas also stated that he moved seats because Watson had been typing on his phone and laughing, which was distracting. Moore reported that, during their meeting, Thomas referred repeatedly to a sheet of paper that he had with him, which appeared to be a script or outline. Thomas "did not deviate" from this paper when Moore requested details, and his responses to Moore's follow-up questions "lacked any substance."

Moore also met with Blake Lankford, who was seated beside Thomas during the incident. Lankford recalled that "both students looked really tense" and heard Watson tell Thomas that he should leave. Lankford also stated that after Thomas left the room, Lankford asked Watson what happened, and Watson showed him a note indicating what Thomas allegedly stated. Watson had provided this note to Moore, and Lankford confirmed its substance, which matched the other descriptions of the incident by Watson. Lankford told Moore that he did not hear or see Watson laughing or otherwise causing a distraction.

At the conclusion of his investigation, Moore determined that Thomas was responsible for the harassment charge but not the threat charge. On May 25, 2016, Moore shared his findings with Thomas and explained that, while Thomas would not be permitted to return to the classroom, he would be able to meet one-on-one with his professor and continue working with his group. These accommodations would enable Thomas to still obtain credits for the class. Tragically, Thomas died by suicide on June 2, 2016.

No. 22-10348

On April 4, 2017, Klocke filed suit against Watson based on his email complaint to Dean Snow.[3] Watson filed a motion to dismiss the complaint pursuant to the Texas Citizens Participation Act ("TCPA"), which protects defendants from retaliatory defamation claims arising from the exercise of a defendant's First Amendment rights. The district court granted Watson's motion to dismiss, but the Fifth Circuit reversed. *See Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019). The panel held that the TCPA does not apply in federal court, so it did not serve as a basis for granting the motion to dismiss. *Id.* at 249.

Klocke then filed an amended complaint on September 30, 2019, alleging defamation claims based on two of Watson's Facebook posts on the day of the incident, in addition to the original claim based on Watson's email complaint to Dean Snow. Watson filed a motion for summary judgment, arguing that summary judgment was appropriate on a number of grounds. The district court granted Watson's motion, finding that Watson did not publish false statements of fact about Thomas; Thomas waived any arguments relating to defamation per se; Thomas did not present competent summary judgment evidence of compensable damages; and Thomas failed to raise a genuine dispute of material fact as to the defamatory false impression claim.

The Fifth Circuit initially affirmed the district court's judgment, holding that there was no genuine dispute of material fact as to Watson's affirmative defense of truth because the only admissible evidence of the incident was Watson's account of what occurred. *Klocke v. Watson*, 861 F. App'x 524, 533–34 (5th Cir.), *opinion withdrawn on reh'g*, 2021 WL 5871884

---

[3] Klocke also filed a Title IX claim against UTA, which is not at issue in this appeal. The district court granted summary judgment for UTA, and we affirmed that judgment. *See Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204 (5th Cir. 2019).

No. 22-10348

(5th Cir. 2021). Klocke filed a petition for rehearing en banc, which the panel granted as a petition for panel rehearing. *Klocke*, 2021 WL 5871884, at *1. In so doing, the panel withdrew its original opinion, reversed the district court's summary judgment, and remanded the case for further proceedings. *Id.* It determined that, "[a]lthough the parties' summary-judgment filings presented the district court with numerous evidentiary issues, the district court did not resolve those questions prior to granting summary judgment." *Id.* at *6. Watson's motion for summary judgment and Klocke's opposition to it both challenged the admissibility of the other party's evidence, and the panel reasoned that the district court erred by failing to decide these issues and instead relying upon improper credibility determinations regarding Watson and Moore to support its judgment that there were no genuine disputes of material fact as to the elements of falsity and fault. *Id.* Further, the panel held that the district court erred in determining that Klocke waived the issue of defamation per se and that Klocke was unable to present competent evidence of compensable damages. *Id.* at *7–8.

On remand, Klocke filed a motion for partial summary judgment, seeking a ruling that Watson defamed and injured Thomas as matters of law. Watson also filed a new motion for summary judgment, arguing that: (1) Klocke's claims based on Watson's Facebook posts were not filed within the one-year statute of limitations; (2) there was no genuine dispute of material fact as to Watson's affirmative defense of truth; (3) Klocke could not present competent summary judgment evidence that Watson's publications constituted defamation per se; and (4) Klocke was barred from seeking exemplary damages because of his failure to comply with the Texas Defamation Mitigation Act.

On April 6, 2022, the district court granted Watson's motion and denied Klocke's motion. It considered the myriad evidentiary issues on both sides and determined that only Watson's version of the incident was

admissible and the evidence upon which Klocke relied was either inadmissible hearsay or did not contradict Watson's account. Therefore, there was no genuine dispute of material fact as to Watson's truthfulness, and Thomas was not defamed as a matter of law. The court also held that Watson's statements did not rise to the level of defamation per se because they did not, contrary to Klocke's assertions, impute criminal activity or sexual misconduct to Thomas. It further held that Klocke's Facebook-related claims were untimely; that Klocke was barred from recovering exemplary damages because he failed to comply with the Texas Defamation Mitigation Act; and that the testimony of Alan Berman, Klocke's expert, was inadmissible to establish the reason for Thomas' suicide. Klocke timely appealed.

## II.

This court reviews grants of summary judgment de novo. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support their assertions that a fact cannot be or is genuinely disputed, parties may: (1) "cit[e] to particular parts of materials in the record"; (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute"; or (3) demonstrate "that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1). The evidence introduced and all factual inferences from the evidence must be viewed in a light most favorable to the nonmovant, but the nonmovant may not rest on mere conclusory allegations. *Smith*, 827 F.3d at 417.

## III.

Watson argues that Klocke's claims relating to Watson's Facebook posts are barred by the statute of limitations. Under Texas law, there is a one-year statute of limitations for defamation actions. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741–42 (5th Cir. 2019). Generally, a defamation claim accrues on the date the alleged defamatory statement is published or circulated by the defendant; however, in certain defamation cases the discovery rule applies, "whereby the statute of limitations does not begin to run until the injured party learns of, or in the exercise of reasonable diligence should have learned of, the injury or wrong giving rise to the cause of action." *Kelley v. Rinkle*, 532 S.W.2d 947, 948 (Tex. 1976); *see also Childs v. Haussecker*, 974 S.W.2d 31, 39–40 (Tex. 1998) (explaining the scope of the discovery rule).

Klocke learned of Watson's allegedly defamatory Facebook posts no later than February 9, 2018, when Watson produced the posts as part of this litigation. Klocke did not bring claims related to these posts until September 30, 2019, as part of his first amended complaint. Even if the discovery rule applies, Klocke's claims concerning the Facebook posts were filed more than one year after he learned of the posts.

Klocke does not contest this; instead, he argues that the statute of limitations was tolled with respect to these claims because their viability depended on the outcome of the appeal that was ongoing when the posts were produced. Specifically, Klocke contends that his ability to assert claims related to the Facebook posts depended on whether the TCPA applied to bar his defamation claims. He further argues that equitable tolling should apply because he was precluded from amending his complaint during the pendency of the appeal.

Because the Texas statute of limitations applies in this case, we also apply Texas' tolling rules and principles. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015). "Texas courts have held that as a general rule, where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991). Klocke argues that the ongoing appeal prevented him from exercising his legal remedy with respect to the allegedly defamatory Facebook posts because such claims would be compulsory in this case. But "Texas law treats each alleged defamatory publication as a single, separate transaction with an independent injury," so Klocke was not required to bring the Facebook claims as part of the original suit. *TV Azteca, S.A.B. de C.V. v. Trevino Ruiz*, 611 S.W.3d 24, 33 (Tex. App. 2020). Instead, Klocke was free to bring these claims in a separate suit in state or federal court; he was not "prevented from exercising his legal remedy" with respect to those claims. *Jackson*, 950 F.2d at 265. Therefore, the statute of limitations was not tolled with respect to these claims during the pendency of the earlier appeal. *TV Azteca*, 611 S.W.3d at 33.

Neither did equitable tolling exist during the pendency of Klocke's appeal. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995). This doctrine is used sparingly by Texas courts as well as federal courts, and litigants may not rely upon it "to avoid the consequences of their own negligence." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (per curiam) (quoting *Hand v. Stevens Transp., Inc.*, 83 S.W.3d 286, 293 (Tex. App. 2002)). Equitable tolling is inappropriate, for example, "when the party seeking relief has an adequate

legal or statutory remedy to avoid the consequences of the statute of limitations." *Lambert*, 44 F.3d at 299. Because Klocke could have brought these claims in a separate suit within the statute of limitations but chose not to do so, equitable tolling is inappropriate. Klocke's claims based on allegedly defamatory statements in Watson's Facebook posts are thus barred by the statute of limitations.

## IV.

Klocke's claims relating to Watson's email complaint to Snow yet remain. Under Texas law, "[t]o state a defamation claim, a plaintiff must show (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages, in some cases." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). Truth of the statement in the publication is an affirmative defense in defamation suits. Tex. Civ. Prac. & Rem. Code § 73.005(a); *see Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019) ("In defamation suits brought by private individuals, truth is an affirmative defense.").

Klocke contests the district court's grant of summary judgment to Watson based on the affirmative defense of truth. He argues that Watson failed to meet his burden to establish the truthfulness of his statements regarding Thomas and that he put forward competent summary judgment evidence to establish the falsity of Watson's statements. He also contends that the district court impermissibly evaluated Thomas' credibility in its consideration of the residual hearsay exception. We address, and reject, each of these arguments in turn.

**A.**

First, Klocke argues that Watson's sworn testimony is insufficient to establish the truthfulness of his statements regarding Thomas because his testimony must be excluded as inadmissible hearsay under Federal Rule of Evidence 801 and as inadmissible testimony under Texas Rule of Evidence 601. Regarding Rule 801, Watson responds that his testimony regarding Thomas' statements is admissible as an opposing party's statement. We agree. Under Rule 801, a statement "offered against an opposing party" that "was made by the party in an individual . . . capacity" is not hearsay. FED. R. EVID. 801(d)(2)(A). Watson testified against Klocke, the administrator of Thomas' estate, as to statements made by Thomas. Therefore, Watson's testimony regarding Thomas' statements is admissible as an opposing party's statement. *See Est. of Shafer v. C.I.R.*, 749 F.2d 1216, 1220 (6th Cir. 1984) (statements attributed to decedent are admissible by the opposing party when the decedent's estate is a party to the action); *see also Phillips v. Grady Cnty. Bd. of Cnty. Comm'rs*, 92 F. App'x 692, 696 (10th Cir. 2004) (noting that "a decedent, 'through his estate, is a party to [an] action,' so that the decedent's statements 'are a classic example of an admission'" (alteration in original) (quoting *Shafer*, 749 F.3d at 1220)); *United States v. Est. of Mathewson*, 2016 WL 7409855, at *4 (W.D. Tex. Apr. 19, 2016) ("Admissions by a decedent fall within [the party-opponent statement] exception when the estate is a party to the lawsuit.").

Rule 601 of the Texas Rules of Evidence, which contains what is known as the "Dead Man's Rule," governs witness competency and generally prohibits a party from "testify[ing] against another party about an oral statement by the testator, intestate, or ward" in civil cases "by or against a party in the party's capacity as an executor, administrator, or guardian." TEX. R. EVID. 601(b). Rule 601 also outlines two exceptions, whereby such testimony is permissible: if (1) "the party's testimony about the statement is

corroborated"; or (2) "the opposing party calls the party to testify at the trial about the statement." *Id.* 601(b)(3). Klocke argues that the first exception is inapplicable because the evidence put forward by Watson is self-serving and not independently corroborated. He argues that the second exception does not apply because there has been no trial in this case. Watson, by contrast, contends that both exceptions apply.

We agree with Watson and the district court that at least one of the exceptions to the Dead Man's Rule applies. In general, Texas courts narrowly construe the Dead Man's Rule. *E.g.*, *Fraga v. Drake*, 276 S.W.3d 55, 61 (Tex. App. 2008). Concerning the first exception, "the threshold for corroborating evidence is a low one." *Keeney v. Williams*, 2020 WL 5267568, at *3 (Tex. App. 2020). Corroborating evidence "need not be sufficient standing alone to support the verdict, but must tend to confirm and strengthen the testimony of the witness and show the probability of its truth," including by "show[ing] conduct on the part of the deceased which is generally consistent with the testimony concerning the deceased's statements." *Quitta v. Fossati*, 808 S.W.2d 636, 641 (Tex. App. 1991); *see also Fraga*, 276 S.W.3d at 61. In *Quitta*, the defendant testified to the existence and terms of an alleged oral lease modification he entered into with the decedent. The proffered corroborating evidence was the testimony of the decedent's brother, who recounted the decedent's statement that the tenants "were going to rent a house of hers and do some work in exchange for some rent." 808 S.W.2d at 641–42. The court considered this to be sufficient corroboration, despite the plaintiff's protest that the testimony only showed that there may have been an agreement prior to the written lease, because it "may just as consistently show the likelihood of a later oral modification to the written lease." *Id.* at 642.

Here, Watson provided independently corroborated evidence that tends to confirm and strengthen his testimony concerning Thomas'

statements, satisfying the first exception to the Dead Man's Rule. For example, Moore stated in his declaration that during his initial call with Thomas, Thomas told Moore that he "knew what this was in reference to" and did not dispute the allegations nor protest being out of class; he was "stoic and unemotional." Moore also reported that, in their subsequent meeting, Thomas referred repeatedly to a sheet of paper that he had with him, which appeared to be a script or outline. Thomas "did not deviate" from this paper when Moore requested details such that his responses "lacked any substance." Thomas' conduct, as recollected by Moore, is generally consistent with Watson's testimony. Watson provided other corroborating evidence as well. Lankford testified that he noticed that Watson and Thomas "were both really tense" during class, like "something was going on between them," and reported to Moore during Moore's investigation that both students looked tense and that he did not see or hear Watson laughing or causing a distraction. Moore also observed that "Watson seemed genuinely scared and worried" during their meeting, and Moore "was left with the impression that [Watson] was emotionally upset and fearful" of Thomas. Given this corroboration, Watson's testimony concerning Thomas' statements are excepted from the Dead Man's Rule and admissible to show the truthfulness of his publications. Because we find that the first exception to the Dead Man's Rule applies, we need not decide whether the second exception is applicable.

## B.

Because Watson has satisfied his initial burden of establishing truthfulness, Klocke must put forward competent summary judgment evidence that raises a genuine dispute of material fact as to the truth of Watson's publication. Klocke first argues that Watson's own admissions—that Thomas never physically threatened him—prove Watson's publication was false. However, Watson never claimed that Thomas physically

threatened him in his email complaint to Dean Snow, which is the only allegedly defamatory publication at issue. Klocke acknowledges this, contending that the Facebook posts nonetheless show that Watson verbally told Dean Snow that Thomas had physically threatened him. But speculation as to what Watson may have said to Dean Snow does not raise a genuine factual dispute. *See Warren*, 932 F.3d at 385 (plaintiff's defamation claim cannot survive summary judgment based on speculation as to the publication of allegedly defamatory comments).

Next, Klocke attempts to dispute Watson's story with Thomas' recollection of the incident as recorded in Moore's interview notes and report. Watson argues that Thomas' statements to Moore are inadmissible hearsay, but Klocke contends that his statements fall under several exceptions to the rule against hearsay. We agree with Watson and the district court that Thomas' statements as recorded by Moore are inadmissible by Klocke and thus not competent summary judgment evidence.

Klocke argues that Moore's notes are admissible under Rule 803(1) as a present sense impression, which is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event." *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991). Moore did not interview Thomas until four days after the incident in question. Therefore, Thomas' statements describing the incident were not contemporaneous with the incident itself, and they are not admissible under the present sense impression hearsay exception.

Klocke next contends that Moore's notes are admissible under Rule 803(6) as records of a regularly conducted activity, also known as the business

records exception. FED R. EVID. 803(6). To satisfy this exception, "each participant in the making of the record must be acting in his normal course of business." *Rock*, 922 F.2d at 279. Though Moore, as a UTA investigator, was acting in his normal course of business, Thomas was not. Thomas was a UTA student, and his being interviewed as part of an ongoing investigation into his conduct was not a regularly conducted activity. For this reason, Thomas' statements as recorded by Moore are not admissible under the business records hearsay exception.

Klocke also relies upon Rule 807, the residual hearsay exception, to admit Moore's notes of his discussion with Thomas. The residual hearsay exception allows a statement that is otherwise hearsay to be admitted if: "(1) the statement is supported by sufficient guarantees of trustworthiness"; and "(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." FED. R. EVID. 807(a). As the district court recognized, there are myriad reasons that Thomas' statements to Moore were not supported by sufficient guarantees of trustworthiness: the statements were self-serving, as they were made during the course of an investigation into his conduct; during the meeting, Thomas kept referring to a sheet of paper he had with him that appeared to be a script or outline; and he would not deviate from this script, such that his responses to follow-up questions "lacked any substance."[4] For these reasons, Moore's notes are not admissible to prove the truth of Thomas' statements.

---

[4] Klocke accuses the district court of improperly assessing the credibility of Thomas in its discussion of the residual hearsay exception; however, the court was merely articulating why Thomas' statements to Moore were not supported by "sufficient guarantees of trustworthiness," which was appropriate in this context. *See* FED. R. EVID. 807(a)(1). For this reason, we reject Klocke's argument concerning the district court's supposed credibility determination.

Klocke then argues that Moore's notes, and Thomas' statements within them, are admissible "not to prove the truth of Thomas' assertions but to prove that Moore perceived the two student's [*sic*] stories to differ, and that there was no additional evidence identified to corroborate Watson's story that Thomas threatened him or acted as an aggressor," thereby making them non-hearsay. But before any evidence may be admitted, it must be relevant. FED. R. EVID. 402. Evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence, and that fact is of consequence in determining the action. *Id.* 401. At issue is whether Watson's publications were true; Moore's state of mind is not relevant to that inquiry. Even if Moore's state of mind was relevant to the truthfulness of Watson's publication, and Klocke does not explain why it would be, Thomas' statements as recorded in Moore's notes would be excluded because their "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* 403. As a result, Moore's notes recounting Thomas' statements are not competent summary judgment evidence and cannot be relied upon by Klocke to establish a genuine dispute of material fact as to the truthfulness of Watson's publication.

Lastly, Klocke argues that Lankford's testimony proves the falsity of Watson's publications. However, Lankford's testimony is consistent with the statements made by Watson. Lankford testified that he "noticed that something was going on" beside him and heard Watson say, "Well, if you don't like it, then you can leave."[5] He did not observe what precipitated the

---

[5] This is consistent with, but not identical to, Watson's version, which alleges that he stated, "I think you should leave." Lankford's testimony was taken in December 2019, over three years after the incident in question. Given the time that passed, the statements

conversation but "noticed they were both really tense," like "something was going on between them." He did not observe Watson express that he needed help and did not notice that Watson appeared to be scared or fearful, nor did he perceive Thomas as threatening and did not see or hear any threats of physical violence. Lankford recalled talking to Watson about what happened during class, but Watson did not say he was threatened; however, he mentioned that he was going to talk to the professor about the incident. All of this is consistent with Watson's publication: Watson explained that their communications were typed on laptops, so another classmate would not have seen particular statements on the screens; Watson never asserted that he was physically threatened; Watson spoke with Professor Long after class; and Watson never said that he asked for help or appeared outwardly scared or fearful. Despite Klocke's protestations to the contrary, Lankford's testimony does not contradict Watson's publication.

In sum, Watson established his affirmative defense of truth, and Klocke was unable to furnish any competent summary judgment evidence to contradict Watson's publication or otherwise prove falsity. Therefore, there is no genuine dispute of material fact as to the truthfulness of Watson's publication. Because Watson has succeeded in establishing his affirmative defense of truth, Klocke has not successfully asserted a defamation claim. Accordingly, we need not address the remaining issues raised by Klocke.

## V.

For the foregoing reasons, the district court's summary judgment in favor of Watson is AFFIRMED.

---

are not materially different, and Lankford's testimony does not contradict Watson's account.